### In re Vern D. BLANCHARD d/b/a American Multi–Systems, Debtor.

### Apex Wholesale Inc., Assignee of Fortunet, Inc., Plaintiff,

### v.

### Vern D. Blanchard d/b/a American Multi–Systems, Defendant.

### Adversary No. 98–90021–H7. Related No. 96–12037–H7.

United States Bankruptcy Court, S.D. California, San Diego Division.

Nov. 5, 1999.

---

John L. Morrell, Lauri Croce Streeter, Higgs, Fletcher & Mack LLP, San Diego, CA, for Town & Country.

James L. Kennedy, San Diego, CA, Chapter 7 trustee.

Gary B. Rudolph, Sparber, Ferguson, Ponder & Ryan, San Diego, CA, for trustee.

Keith Herron, Purdy & Herron, San Diego, CA, for Blanchard.

Tina Pivonka, Hichy, Witte, Wood, Anderson & Hodges, San Diego, CA, for Apex.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

At issue is (1) whether the doctrine of equitable tolling applies to the time limitation for filing a complaint for revocation of discharge set forth in 11 U.S.C. § 727(e)(2); and (2) whether a case can be properly closed under 11 U.S.C. § 350(a)[1] when assets remain unadministered, for purposes of applying the time limitation under 11 U.S.C. § 727(e)(2).

This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

## FACTS AND PROCEDURAL BACKGROUND

On September 7, 1996, debtor Vern D. Blanchard ("Debtor") filed a no-asset Chapter 7 bankruptcy case. On October 9, 1996, the Chapter 7 trustee ("Trustee") filed a "Report of No Distribution." On December 20, 1996, this Court granted Debtor's discharge. In early January 1997, Fortunet, Inc., a judgment creditor,[2] assigned its interest to Apex Wholesale, Inc. ("Apex"). On January 15, 1997, the case was closed.

Nearly a year after the Debtor filed his petition, Apex discovered, through filings with the Securities and Exchange Commission ("SEC") associated with the initial public offering of stock in GameTech International Inc. ("GameTech"), that Debtor had allegedly not provided full disclosure of his assets. Specifically, Apex allegedly discovered that according to the SEC filings, Debtor was the founder of GameTech, Debtor had received stock options during the pendency of the bankruptcy proceeding,[3] and Debtor was the sole trustee of a family trust which owned a significant portion of GameTech.

On January 14, 1998, Apex and Fletcher Hills Town & Country ("Town & Country") successfully moved to reopen Debtor's Chapter 7, asserting Debtor fraudulently failed to report his interest in GameTech on his schedules, and simultaneously filed a complaint seeking to revoke Debtor's discharge. Debtor moved

---

1. Unless otherwise indicated all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. In 1993, Debtor allegedly misappropriated intellectual property owned by Fortunet, Inc. ("Fortunet"). Fortunet is a Nevada corporation engaged in supplying Indian gaming halls with computerized bingo equipment. Debtor and his associates allegedly obtained a complete, fully functional Fortunet computer system from which Debtor then de-complied and duplicated Fortunet's proprietary software. Debtor, operating through his trust, American Multi–Systems, then installed his 'new' software on computers which were then leased to third party Indian bingo halls. Fortunet filed suit against Debtor on November 12, 1993. Debtor refused to respond to the court's discovery orders. The district court

imposed default as a discovery sanction. Fortunet applied for entry of a default judgment on October 6, 1994. Debtor requested a continuance to hire new counsel. The court granted Debtor a continuance, but instead of hiring new counsel, Debtor filed a Chapter 7 petition. Debtor later converted the case to Chapter 13 and ultimately dismissed the case. On November 21, 1995, the district court entered a default judgment in favor of Fortunet in the amount of $762,682.87.

3. In opposition to Apex's motion to reopen the bankruptcy case, Debtor submitted evidence that his stock options were not finally approved by GameTech's board of directors until the following year. It is unclear whether the stock options became property of the estate, but the Court makes no determination in that regard at this time.

to dismiss Apex's complaint seeking revocation of his discharge, asserting the limitations period set forth in § 727(e)(2) had expired. This Court found that the limitations period had expired and dismissed the complaint with prejudice.

Apex moved for reconsideration on the ground that equitable tolling should apply to § 727(e)(2). This Court denied Apex's motion for reconsideration. Apex appealed to the district court.

The district court affirmed this Court's interpretation of § 727(e)(2). This Court had held that the limitations period of § 727(e)(2) is either the date the case is closed or one year after the date of discharge, whichever occurs later. Specifically, Debtor received his discharge on December 20, 1996 and the case was closed on January 15, 1997. The district court agreed that because one year after the original date of discharge (December 20, 1997) is certainly later than the original date the case was closed (January 15, 1997), it represents the "later" date for purposes of § 727(e)(2), and Apex's adversary proceeding was required to be brought no later than December 20, 1997.

The district court remanded the matter, however, for this Court to consider whether equitable tolling applied in light of the intervening decision of *In re Peebles*, 224 B.R. 519 (Bankr.D.Mass.1998). The Trustee joins in this proceeding.

### DISCUSSION

Section 727(e)(2) provides the limitations period for revocation of discharge.[4] Because Apex's revocation claim is barred by the time period set forth in the statute, the only issues are whether equitable tolling applies to § 727(e)(2) and whether Debtor's case was properly closed for purposes of § 727(e)(2)(B).

4. Section 727(e) provides in relevant part:
The trustee, a creditor, or the United States trustee may request a revocation of a discharge—
(2) under subsection (d)(2) or (d)(3) of this section before the later of—

### A. *Equitable Tolling.*

■ Apex urges the Court to adopt the rationale set forth in *Peebles*, 224 B.R. at 519 and *In re Succa*, 125 B.R. 168 (Bankr.W.D.Texas 1991) which applied the doctrine of equitable tolling to § 727(e)(2) actions. Apex argues that "until Congress makes a clear statement that debtors can play 'hide and seek' with their assets and keep their discharge by waiting for the limitation period to pass, this Court should apply the doctrine of equitable tolling." Debtor relies on *In re Johnson*, 187 B.R. 984, 986–88 (Bankr.S.D.Cal.1995) which held that equitable tolling is inapplicable to § 727(e)(2) because the statute was intended by Congress as a statute of repose.

This Court finds that *Johnson* and the line of cases which find equitable tolling inapplicable to § 727(e)(2) are more persuasive. Section 727(e)(2) is a statute of repose and, as such, is not subject to the doctrine of equitable tolling. In support of this conclusion, the Court adopts the rationale set forth in *Johnson*, 187 B.R. at 986–88, *In re Ford*, 159 B.R. 590, 592–93 (Bankr.D.Oregon 1993), and *In re Phillips*, 233 B.R. 712, 715–18 (Bankr.W.D.Texas 1999).

■ The fact that the limitation period is contained within the text of the statute is indicative that Congress must have intended that a creditor's right to file a complaint seeking the revocation of discharge would terminate on a certain date. See *Phillips*, 233 B.R. at 716 (the express terms of the statute demonstrate that Congress must not have intended for equitable tolling to apply). The *Johnson* court noted:

The gravamen of the causes of action for revocation of discharge under

(A) one year after the granting of such discharge; and
(B) the date the case is closed.

§ 727(d)(1) and (d)(2) are, respectively, that the debtor committed fraud in obtaining the discharge and the plaintiff did not know of the fraud until after the discharge; and that the debtor acquired property of the estate but 'knowingly and fraudulently' failed to report it or surrender it to the trustee. *Johnson*, 187 B.R. at 986.

To find that equitable tolling applies to § 727(e)(2) would effectively "wipe those provisions from the books." *Id.* at 986.

■ Unlike a statute of limitation which begins running upon accrual of the cause of action, the limitation period set forth in § 727(e)(2) sets an outside limit after which, regardless of whether the cause of action has accrued, the cause of action is extinguished.[5] It is conceivable that the time limitation set forth in § 727(e)(2) may run before the plaintiff discovers that a debtor committed fraud. The result promotes a finality policy that is consistent with a statute of repose.[6]

■ In addition, Federal Rule of Bankruptcy Procedure 9024 makes clear that Federal Rule of Civil Procedure 60 does not permit the extension of the time allowed by § 727 for the filing of a complaint to revoke a discharge. *Johnson*, 187 B.R. at 987. A leading treatise on bankruptcy has concluded that the time limitation "is not a mere statute of limitations, but an essential prerequisite to the proceeding." *Id.* (citation omitted); *Ford*, 159 B.R. at 592 (citation omitted); *Phillips*, 233 B.R. at 716 (citation omitted).

■ This Court is aware that the doctrine of equitable tolling has been applied in the context of § 546(a) avoidance actions. *Johnson*, 187 B.R. at 986 (citations omitted); *Phillips*, 233 B.R. at 717 (citations omitted). However, "equitable tolling is not permissible where it is inconsistent with the text of the relevant statute." *Phillips*, 233 B.R. at 717. Therefore, the Court finds that the cases applying equitable tolling to the time limitation in § 546(a) are unpersuasive in the instant analysis.

**B. Assuming Equitable Tolling Applies to Section 727(e)(2)(A), It Would Not Apply Under the Circumstances of This Case.**

■ Assuming equitable tolling applies to § 727(e)(2), the Court finds that the parties would still be barred by the limitations period.

To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts. *Fed. Election Comm'n. v. Williams*, 104 F.3d 237 (9th Cir.1996).

Apex, the Trustee and Town & Country had a period of three months after discovery of GameTech's SEC filings during which to conduct an investigation. The record shows that none of the parties took any steps to investigate. Apex simply filed its motion to reopen the case on January 14, 1998, after the limitations period of § 727(e)(2) expired. Indeed, counsel for Town & Country stated that noth-

---

**5.** Statutes of limitations are distinct from statutes of repose.

> The former generally limits the time for bringing a claim after it accrues, while the latter limits the time during which a claim can accrue in the first place. A statute of repose sets forth a period of repose, a given time span after the defendant's wrongful act in which a claim must accrue or be barred. A statute of repose bars a claim not because the plaintiff brought [its] claim too late, but rather because [its] injury oc-

curred, and thus [its] claim accrued too late, after the expiration of the period of repose.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 ARIZ.ST.L.J. 1015, 1018 (1997) (citations omitted).

**6.** *See generally*, Francis E. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 AM.U.L.REV. 579, 583 (1981).

ing was done sooner because she "relied upon the *Johnson* decision which said that [she] had extra time." [Transcript of September 23, 1999, hearing 17:14–16]. Unfortunately, this Court did not interpret the time limitations in § 727(e)(2) the same as the *Johnson* court.[7]

Moreover, Debtor's schedules listed Debtor as the trustee to several family trusts. At the first hearing on this matter, this Court interpreted § 727(e)(2) to mean that "if you [creditor] suspect something's wrong, you've got to start conducting your investigation ... if you need more time, you can always ask the court not to close the case". [Transcript of May, 13, 1999, hearing 8:6–9]. Debtor's petition was filed on September 7, 1996, and the Trustee filed a report of no distribution on October 9, 1996, after the 341a hearing. The Trustee and creditors had ample opportunity to question Debtor about his position as trustee for the family trusts and what assets those trusts contained. Nonetheless, the Trustee filed a report of no distribution a little over a month after the filing.

The facts indicate that Apex discovered GameTech's SEC filing within the limitations period set forth in § 727(e)(2), but failed to investigate or perform any due diligence until it was too late. Therefore, equitable principles do not favor the creditors in this case.

## C. *Closing of a Case.*

■ Section 350(a) provides that after an estate is fully administered, the court shall close the case. Apex argues that the estate was not properly closed because debtor failed to schedule his interests in GameTech and, therefore, the statute of limitations under § 727(e)(2) did not begin to run until the debtor's fraud was discovered. Apex urges the Court to adopt the view espoused by *Peebles*, 224 B.R. at 521 and *In re Petty*, 93 B.R. 208, 211–212 (9th Cir. BAP 1988), which hold that when unscheduled assets remain unadministered, the case is not properly closed under § 350(a). According to the *Peebles* court, the word "closed" in § 727(e)(2)(B) must mean properly and finally closed. Therefore, if there are unadministered assets the case could never be properly and finally closed and the statute of limitations would not begin to run. The Court notes that *Peebles* relied on *Petty* which involved a § 546(a) action.

Debtor argues to the contrary, that Apex's argument would effectively eliminate the need for the one year limitation period set forth in § 727(e)(2)(A).

This Court agrees with Debtor. Apex's interpretation would render the one year after the date of discharge limitations period in § 727(e)(2)(A) meaningless. A case could never be closed if there were assets that remained unadministered. *Johnson*, 187 B.R. at 984; *Ford*, 159 B.R. at 590.

## D. *Apex is Not Without A Remedy.*

Even though Debtor may receive a discharge, Apex and other creditors may not be left without a remedy. The Trustee may still recover property of the bankruptcy estate, which may, or may not, include Debtor's interest in GameTech. Debtor's discharge does not prohibit the Trustee or creditors from using Debtor's prepetition property to satisfy Debtor's prepetition debts. The Court, however, makes no ruling with respect to this issue at this time.

7. In *Johnson*, the court found that the action must be filed before the later of one year after the granting of the discharge *or* the date is closed. *Johnson*, 187 B.R. at 986 (emphasis added). Under this Court's interpretation the complaint for revocation had to be made before the later of one year after the discharge (December 20, 1997) and the date the case was closed (January 15, 1997). Because the case had already closed on January 15, 1997, plaintiff had to file its complaint before December 20, 1997 (one year after the Debtor received his discharge). Under the *Johnson* court's interpretation, the complaint for revocation had to be made the later of one year after the date of discharge (December 20, 1997) or one year after the date the case is closed (January 15, 1998). Apex filed the motion to reopen on January 14, 1998.

*CONCLUSION*

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Debtor is directed to file with this Court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.