In re Steven DOLLIVER and Sandra
Dolliver, d/b/a Steve's Electric,
Debtors.

Dale Hadlock, Plaintiff,

v.

Steven Dolliver and Sandra
Dolliver, Defendants.

Bankruptcy No. 98–11413.
Adversary No. 00–1051.

United States Bankruptcy Court,
D. Maine.

Nov. 16, 2000.

George W. Kurr, Jr., Logan, Kurr & Hamilton, Bangor, ME, for Plaintiff.

Frank B. Walker, Ellsworth, ME, for Defendants.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Chief Judge.

Before me is the debtors' motion to dismiss Dale Hadlock's complaint seeking revocation of their Chapter 7 discharge. For the reasons set forth below, the motion to dismiss will be granted.

## DISCUSSION

### 1. Motion to Dismiss Standard

The manner in which a trial court judge considers a motion to dismiss has been carefully explained by our district court:

A motion to dismiss is designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The Court accepts all well-pleaded facts as true, "indulging every

reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). The plaintiff, however, must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). The Court need not accept "bald assertions" or "unsubstantiated conclusions." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). "[I]f the facts narrated by the plaintiff 'do not at least outline or adumbrate' a viable claim, [the] complaint cannot pass Rule 12(b)(6) muster." *Gooley,* 851 F.2d at 515 (quoting *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir.1984)). *Caldwell v. Federal Express Corp.,* 908 F.Supp. 29, 31 (D.Me.1995). *See also Cooperman v. Individual Inc.,* 171 F.3d 43, 46 (1st Cir.1999).

## 2. Background

Employing the standard outlined above, the complaint may be fairly read to set forth the following scenario.

On August 28, 1996, Sandra Dolliver transferred real estate she owned in Blue Hill, Maine, to her sister, Nellie Riley, for "less than adequate consideration." On August 28, 1996, Steven Dolliver transferred real estate he owned in Trenton, Maine, to his daughter, Andrea Dolliver Hamilton, and he also transferred other Trenton real estate to another daughter, Sherryl Dolliver Fields. In each case he received "less than adequate consideration" in return.

The Dollivers filed a joint, voluntary Chapter 7 petition on August 10, 1998. They scheduled Hadlock as a creditor holding a $57,116.00 claim. They received their discharge on November 17, 1998, and their case closed on November 20, 1998.

On October 20, 1999, Andrea Dolliver Hamilton transferred back to Steven and Sandra Dolliver the same Trenton real estate Steven had transferred to her in 1996. On November 9, 1999, Sherryl Dolliver Fields transferred the real estate she had received from Steven back to him. In each case, Steven paid "less than adequate consideration" for the return transfers. The transfers at issue were all made with intent to delay, hinder, and defraud the Dollivers' creditors and to deprive their bankruptcy estate of valuable assets.

Hadlock moved to reopen the case on February 14, 2000, so that he might initiate action seeking revocation of the Dollivers' discharge and so that the trustee might recover and administer previously concealed assets. The case was reopened on March 1, 2000.

## 3. The § 727(d) Cause of Action

■ On July 20, 2000, Hadlock filed his complaint asking that the Dollivers' discharge be revoked pursuant to § 727(d)(1) § 727(d)(2).[1] Section 727(d) provides:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee; or

---

1. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 *et seq.* ("Bankruptcy Code" or "Code").

(3) the debtor committed an act specified in subsection (a)(6) of this section.

§ 727(d).[2]

## 4. The Motion to Dismiss

The Dollivers seek dismissal claiming that Hadlock's complaint comes too late. In support of their motion they cite § 727(e):

(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—

(1) under subsection (d)(1) of this section within one year after such discharge is granted; or

(2) under subsection (d)(2) or (d)(3) of this section before the later of—

(A) one year after the granting of such discharge; and

(B) the date the case is closed.

§ 727(e).

The Dollivers urge that, since their discharge issued on November 17, 1998, and their case closed on November 20, 1998, Hadlock's complaint is untimely, whether he proceeds on a § 727(d)(1) fraudulent discharge theory or on a § 727(d)(2) fraudulent concealment theory.

Hadlock's response combines a technical, Code-sourced argument with general equitable principles. Citing *Dwyer v. Peebles (In re Peebles)*, 224 B.R. 519 (Bankr. D.Mass.1998), he argues that the Dollivers' concealment of assets resulted in their bankruptcy case never being "closed" within the meaning of § 727(e), rendering his § 727(d)(2) claim timely. And, citing *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), he urges that I apply equitable tolling to extend the one year limitations period set forth in the statute, a step that would render his claims under both § 727(d)(1) and § 727(d)(2) timely. Although neither argument carries the day, I will address each in sufficient detail to demonstrate why it fails.

### a. Certainty and Case Closing

*In re Peebles* presented factual allegations not unlike those before me. Peebles received his discharge on May 4, 1995, and the order closing his case entered on May 8, 1995. Nearly three years later, in April 1998, the Chapter 7 trustee filed a complaint asking that Peebles' discharge be revoked.[3] Although he defended the action by asserting that the trustee's complaint was untimely, the *In re Peebles* court determined that the complaint was timely because the bankruptcy case had never been "properly and validly" closed, 224 B.R. at 520, and because, in any event, the one year limitation period set forth in § 727(e) was subject to "equitable tolling" during the Peebles' "continuing concealment" of estate assets. *Id.* at 521.

*In re Peebles* says that § 350(a), which provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case," carries an implicit dictate that, if assets have escaped administration, say through the debtor's fraudulent concealment, the case cannot be "validly" closed. *Id.* at 521. The court reasoned that since the debtor had concealed assets, the order closing the case was a fiction and, therefore, the case remained open. Thus, § 727(e)'s one-year period had not commenced to run. *See id.*

I disagree with *In re Peebles* for the same reasons espoused recently by Judge Deasy in *Bevis v. Bevis (In re Bevis)*, 242 B.R. 805, 812 (Bankr.D.N.H.1999):

Such an approach appears to strip § 727(e)(2) of much of its substance. Under the *Peebles* approach, if a debtor fails to schedule an asset, the case can

---

**2.** A "request" for discharge revocation is initiated by adversary proceeding complaint. *See* Fed. R. Bankr.P. 7001(4).

**3.** Although not mentioned in the decision, one must assume that, before filing her complaint,

the trustee successfully moved to have the bankruptcy case reopened. *See* § 350(b)(bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause.")

never properly be closed, thereby rendering any future § 727(d)(2) action timely *ad infinitum.* This view essentially renders a time-limiting statutory provision with no outside time limit for many cases, a result that this Court concludes cannot be what Congress intended. Accordingly, the Court holds that the Debtor's case was closed for purposes of § 727(e)(2) [when the order closing it issued], notwithstanding the fact that the Debtor failed to schedule or disclose an asset of the estate.

... By creating a mechanism by which a § 727(d)(2) action may be pressed many years following the issuance of a discharge order, the finality of such an order is weakened. At some point, a debtor should be confident in knowing that his or her discharge order is free from attack.

*Id.* at 812 (citation omitted).[4]

 I would add little, except to say, first, that the language of § 350(a), which provides that a bankruptcy case may be "reopened" to administer assets, indicates that the existence of unadministered assets would not seem to preclude valid case closing. And, second, that the *In re Peebles* rule would defy certain application. Would there be a *de minimis* exception? Would it matter if the unscheduled/concealed asset were a compact disc, as opposed to a compact car? A bag of potting soil, as opposed to an acre of land? And would it matter whether or not the unscheduled/concealed asset were potentially exempt?[5] And would it matter (for purpose of "valid" case closing) whether the failure to schedule or concealment was advertent or inadvertent? Such questions, which flow logically from the *In re Peebles* hold-

ing, would work havoc on a statutory scheme that otherwise provides certainty and finality to the bankruptcy process. Thus, I hold, as did *In re Bevis,* that a case is "closed" for purposes of § 350(a) and § 727(e)(2) when the clerk's office enters its order closing the case. Closure is not subject to an indefinite, undefined extension on account of a debtor's failure to schedule assets.

### b. Equitable Tolling and § 727(e)

Hadlock also notches a second arrow from the *In re Peebles* quiver. As an alternative to its case closing thesis, the *In re Peebles* court held that § 727(e)'s time limits are subject to equitable tolling. Thus, a complaint to revoke discharge might be brought more than one year from the debtor's discharge (for purposes of § 727(d)(1) and (e)(1)) or more than one year from discharge or case closing (for purposes of § 727(d)(2) and (e)(2)) if the requisites for equitable tolling are present.[6]

 The Supreme Court has described the doctrine as follows:

[W]here a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

*Holmberg,* 327 U.S. at 397, 66 S.Ct. 582 (quoting *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)). The court stated that equitable tolling "is read

---

4. The facts alleged in *In re Bevis* are disappointingly similar to those asserted both in *In re Peebles* and in the case before me. The plaintiff alleged that the debtor, his ex-spouse, had transferred real estate before bankruptcy in an attempt to cheat the estate of its worth, all the time maintaining a secret interest in the asset.

5. On this score, the analysis gets more involved, *see Petit v. Fessenden,* 80 F.3d 29 (1st Cir.1996), but the point is worth considering.

6. *In re Peebles* only addressed equitable tolling in the application of § 727(d)(2) and (e)(2). Hadlock's argument does not discriminate between the discrete time limits in § 727(e)(1) and (e)(2).

into every federal statute of limitation." *Id.*

In *In re Bevis* Judge Deasy observed that recent Supreme Court decisions do not apply equitable tolling with the ease and routine that *Holmberg* seems to invite. Citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), he noted that application of the doctrine will depend on the provisions of the statute at issue. *See In re Bevis,* 242 B.R. at 809.[7] *See also United States v. Beggerly,* 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998)(holding that the discovery-triggered limitations period in the Quiet Title Act was not subject to equitable tolling, concluding that "[e]quitable tolling is not permissible where it is inconsistent with the text of the relevant statute"); *United States v. Brockamp,* 519 U.S. 347, 350–54, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997)(phrasing its equitable tolling inquiry as: "Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply?" and concluding that Congress did not intend the application of the doctrine to the Tax Code provision under scrutiny).

▇▇▇ With respect to § 727(e)(1), I adopt the *In re Bevis* view:

> Reading the doctrine of equitable tolling into § 727(e)(1) appears to upset a decision already made by Congress. Section 727(e)(1), when read in conjunction with § 727(d)(1), appears already to account for the circumstance that equitable tolling is designed to remedy. Section 727(d)(1), by its express terms, is not applicable unless the party requesting the revocation of a debtor's discharge did not know of the operative fraud until after the granting of a discharge. Thus, the application of § 727(d)(1) always involves a party who

has not discovered fraud until some period after the debtor receives his or her discharge. Yet § 727(e)(1) clearly imposes a one-year time limit beginning *from the date of the debtor's discharge,* notwithstanding the fact that the party requesting revocation has not discovered the relevant fraud until some time after discharge.

242 B.R. at 809 (emphasis added).

▇▇▇ Because it is not phrased in a way that expressly takes discovery of fraud into account, § 727(e)(2)'s wording leaves a bit more room to argue that equitable tolling can operate. Pertinent decisions are few and split, with a slim majority concluding that the doctrine cannot work an extension, or suspension, of the subsection's time limits. *Compare In re Bevis,* 242 B.R. at 809–10; *Apex Wholesale Inc. v. Blanchard (In re Blanchard),* 241 B.R. 461, 464–65 (Bankr.S.D.Cal.1999), *and Davis v. Johnson (In re Johnson),* 187 B.R. 984 (Bankr.S.D.Cal.1995), *with In re Peebles,* 224 B.R. at 522 (applying the doctrine), *and Caughey v. Succa (In re Succa),* 125 B.R. 168 (Bankr.W.D.Tex. 1991)(same).

The rationale for not permitting equitable tolling is that § 727(e)(2) is a "statute of repose," rather than a "statute of limitations."

> [Section] 727(e)(2)'s time constraints are more akin to a statute of repose as opposed to a statute of limitations. The time limit connected with a statute of limitations generally begins when a cause of action accrues, while a statute of repose generally fixes an outside time limit as to when a cause of action may accrue in the first place. *See Blanchard,* 241 B.R. 461, 465. *See also Black's Law Dictionary* 1423 (7th Ed.1999) (defining a statute of repose as one "that

---

**7.** *Lampf, Pleva, Lipkind, Prupis & Petigrow* examined equitable tolling in the context of one section of the Securities Exchange Act. The Court concluded that equitable tolling, though a "venerable principle" was "fundamentally inconsistent" with one of the stat-

ute's dual limitations, a three year period of repose or "cut off." 501 U.S. at 363, 111 S.Ct. 2773 (also observing that the statute's one-year limitation period running from the discovery of the actionable facts required no tolling).

unused

bars a suit a fixed number of years after the defendant acts in some way ... even if this period ends before the plaintiff has suffered an injury"). "A statute of repose sets forth a period of repose, a given time span after the defendant's wrongful act in which a claim must accrue or be barred." *Blanchard*, [241 B.R.] at 465. Section 727(e)(2) sets outside time limits that are pegged to events independent of circumstances that give rise to a § 727(d)(2) cause of action. Section 727(e)(2)'s time limits hinge on when a debtor receives a discharge and when his or her case is closed, events that are unrelated to the fraud that underlies a § 727(d)(2) cause of action.

*In re Bevis*, 242 B.R. at 809–10 (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow* for the proposition that statutes of repose are not subject to equitable tolling). *See supra* note 7.

One must admit that fitting the traditional distinction between "repose" and "limitations" to § 727(e)(2) is a bit awkward. One could argue that the "injury" an aggrieved party-in-interest suffers is the debtor's receipt of a discharge, or even the case's closing without administration of an unscheduled asset. But those events are essentially administrative steps in a bankruptcy case's mill run. The conduct that would be actionable in a non-bankruptcy context would be the debtor's fraud. And to the extent that discharge and case closing relate to the fraud, they are but *consequences* of it. By themselves neither discharge or case closing is subject to "concealment."

Thus, reading § 727(e)(2) in its proper context, it appears that Congress pegged the period within which discharge revocation actions might be brought to bankruptcy case administrative events, rather that to a debtor's fraudulent conduct. Such a reading leads to the conclusion that § 727(e)(2) is, indeed, a statute of repose. And such a reading is consistent with the need that bankruptcy be a finite process, rather than a potentially unending process that might wind on uncertainly for years and years. *See In re Bevis*, 242 B.R. at 810–12. My conclusion is this regard provides additional support for the conclusion that § 727(e)(1) cannot be equitably tolled.[8]

### 5. Winning, Losing, and Cheating

Although I am satisfied that today's decision correctly applies § 727(e)'s time limits to the dispute before me, a brief, additional comment is required. My holding could be criticized as follows: "Refusing to apply equitable tolling or case closing concepts to extend § 727(e)'s one-year time limit leads to the result that the more clever the fraudulent debtor, the more likely he or she is to escape sanction. Debtors who employ sufficient artifice to conceal their fraud for more than one year from discharge or case closing will retain their discharge, having cheated creditors and having lied to the court. In this way, bankruptcy's fundamental tenet, that of providing relief to the 'honest but unfortunate' debtor, will be subverted."

I understand the criticism, but answer it in two ways. First, although bankruptcy may sometimes be a long and winding road, it is not meant to be an endless one.

---

8. Although my decision adopts much of what *In re Bevis* held, I differ with that opinion in one respect. Given *Holmberg*'s view that equitable tolling can be superimposed on *any* statute of limitations, it adds little to analyze the problem in terms of the "plain meaning" doctrine. *See In re Bevis*, 242 B.R. at 810. The (plain) meaning of every such statute carries the possibility of equitable tolling within it.

Courts must be careful not to "reason by label," declaring a provision to be a statute of "limitation" or one of "repose," then declaring tolling permissible or not, based on that label. The inquiry should focus on the text of the statute at issue and the context in which it lies. Only after text and context are examined to determine whether equitable tolling would complement or upset the statute's intended operation should the "limitation" or "repose" label be applied.

Like other statutory procedures, it is riddled with "arbitrary" deadlines and boundaries. Like other court processes, it is meant to have a beginning and an end. The practical points of bankruptcy practice at times can be, as here (if the allegations of Hadlock's complaint were proved), at odds with notions of perfect justice. But I am not free to stretch and twist statutory fabric, case by case, to align with my personal "feeling" of what is "right." Congress makes the policy choices and writes the law. Courts apply the law as written.

Second, to say that a fraudulently obtained discharge is not eternally subject to revocation is not to say that other remedies might not apply. The trustee or others may reopen a bankruptcy case to recover and administer fraudulently concealed assets. *See* § 350(a). And such cases may be referred to the United States Attorney for criminal prosecution under 18 U.S.C. § 152. Thus, avenues to vindicate creditors' interests and public policy remain open long after the chance to revoke a discharge is past.

### *CONCLUSION*

For the reasons set forth above, an order dismissing this adversary proceeding will enter forthwith.