In re Fred A. KOZA, Debtor.

Ara Eresian, Jr., Appellant,

v.

Fred A. Koza, Hampton Properties, LLC, and Stephan M. Rodolakis, Chapter 7 Trustee, Appellees.

BAP No. 06–054.
Bankruptcy No. 93–40386–JBR.

United States Bankruptcy Appellate Panel for the First Circuit.

Sept. 11, 2007.

Ara Eresian, Jr., Pro Se Appellant.

Stephan M. Rodolakis, Pro Se Appellee, and former Chapter 7 Trustee.

Mark S. Foss, for Appellee Hampton Properties, LLC.

Before VOTOLATO, DE JESÚS and VAUGHN, United States Bankruptcy Appellate Panel Judges.

VOTOLATO, Bankruptcy Appellate Panel Judge.

Before the Panel are appeals filed by Ara Eresian, Jr. ("Eresian"), of three bankruptcy court orders in this fourteen-year-old case. Eresian, who challenges the 1993 closing of the case, challenges the following orders: (1) the September 7, 2006, Order Denying Eresian's Motion to Strike and/or Vacate Order Dismissing Bankruptcy Case *Nunc Pro Tunc*, or in the Alternative, for Clarification and/or Determination as to Legal Status of the Within Bankruptcy Case ("Order Denying the Motion to Strike *Nunc Pro Tunc*"); (2) the September 27, 2006, Order Denying, as Untimely, Eresian's Motion to Alter to [sic] Amend Order Dated September 7, 2006 ("Order Denying the 59(e) Motion"); and (3) the October 12, 2006, Order Taking no Action on Eresian's Motion to Vacate the Order Denying the Rule 59(e) Motion ("Order Taking No Action").

Eresian questions the bankruptcy court's authority to close this case, on the ground that the Trustee's 1993 Final Report of No Distribution ("Final Report") was not filed by the duly appointed Chapter 7 Trustee. He then argues that because the case closing was (arguably) defective, the acquisition in 2002 of the Debtor's claim against him by Appellee Hampton Properties, LLC, was void, and

that the asset is still property of the bankruptcy estate. After hearing, the bankruptcy judge ruled that although the Final Report was not filed by the trustee appointed in the case, that defect, per se, did not strip the court of its inherent authority to enter an order closing the case. The bankruptcy judge also ruled that Eresian waited far too long to challenge the closing order, and that his attempt to do so now is time barred.

For the reasons set forth below, the Order Denying the Motion to Strike *Nunc Pro Tunc* and the Order Denying the 59(e) Motion are **AFFIRMED,** and the appeal of the Order Taking No Action on the Motion to Vacate is **DISMISSED.**

## BACKGROUND

On February 10, 1993, Fred A. Koza ("Koza") filed a Chapter 7 petition in the Bankruptcy Court for the District of Massachusetts. Stephan M. Rodolakis, Esq. ("Rodolakis") was appointed Chapter 7 trustee, and Koza filed his papers, including Schedule B which listed a $500,000 claim against Ara Eresian. During his tenure as Koza's trustee, there is no record that Rodolakis either administered or abandoned the claim against Eresian, and that omission is a major item of dispute in this appeal.

On June 15, 1993, Koza received his discharge, and after the filing of the Trustee's Final Report pursuant to 11 U.S.C. § 704(a)(9),[1] an order was entered by Bankruptcy Judge James Queenan on October 29, 1993, closing the case. The record also reveals, however, that the Final Report was signed and filed by one Peter M. Stern, Esq.[2] ("Stern"), and not Rodo-

---

1. 11 U.S.C. § 704(a)(9) states: "The trustee shall—... (9)make a final report and file a final account of the administration of the es-

tate with the court and with the United States trustee."

2. Aside from his status as a Chapter 7 Panel Trustee circa 1993, the record is silent as to

lakis. That irregularity went unnoticed by the Court, the appointed trustee (Rodolakis), and the United States Trustee, and the case remained dormant for thirteen years, until Mr. Eresian's recent filings.

In 2002, in a transaction allegedly unrelated to Koza's bankruptcy,[3] Hampton Properties, Inc. ("Hampton") purchased real estate on Watson Avenue in Worcester, Massachusetts ("the Property"), at a foreclosure sale held by the City of Worcester. Soon after the foreclosure sale, Eresian acquired the prior owner's statutory right of redemption in the Property, then sought to vacate the foreclosure judgment and sale to Hampton. Because Eresian's action placed Hampton's rights in the Property at risk, Hampton began looking to acquire claims against Eresian in order to assist Hampton in thwarting Eresian's efforts to become the owner of the Property.[4] The result of this tactical sparring and posturing is that in December 2002, the Worcester Superior Court entered judgment against Eresian, putting Hampton in position to eliminate all interests or claims by Eresian to the Property. Eresian's appeal of that judgment was denied.

On May 14, 2002, Hampton became the sole owner of Koza's claim against Eresian.[5] At about this time, Eresian discovered that the Final Report In Koza's Chapter 7 case was filed by Stern, and not Rodolakis. In his quest for defensive advantage in his ongoing dispute with Hampton, Rodolakis, et al.,[6] and concerned that

---

why Stern, and not Rodolakis, signed and filed the Final Report. In the place of any *substantive* answer, Rodolakis in a wide ranging, self-serving, and speculative affidavit volunteers inter alia that:

> *I have a theory as to how there came to be a no distribution report* bearing Mr. Stern's signature in this matter. . . . *Apparently, the Clerk's Office would occasionally lose my reports* of no distribution. . . . *I have surmised* that the Clerk's Office misplaced my report of no distribution in this case and thereafter mistakenly called Peter Stern looking for a report of no distribution. *Apparently assuming* that the Clerk's Office would not call him unless he was the Trustee, . . . Attorney Stern *apparently decided* to simply prepare and file a no distribution report . . . . [and] *based on my experience, this is the most rational explanation by far for the presence of the report of no distribution signed by Peter Stern.*

Appellant's App. at 74–75 (emphasis added). While Peter Stern may have been able to provide the explanation as to why he filed the Final Report, we will not hear it because he is deceased.

3. See Footnote 5, *infra*.

4. Hampton admits this was a "belt and suspenders defensive maneuver," taken to guard against a possible adverse decision by the Land Court.

5. Koza's state claim against Eresian was filed as: *Fred A. Koza v. Ara Eresian, Jr., et. al.*, C.A. No. 89–01942A, and judgment entered in favor of Koza on July 14, 1990. There is no reference in the case caption to Hampton *as assignee* of Koza's claim against Eresian.

6. Mark S. Foss, Esq., counsel for Hampton, is a member of Pojani, Hurley, Ritter & Salvidio, LLP, the same firm that employs Stephen Rodolakis. The record also discloses that Rodolakis has been with this firm at least since Hampton acquired the claim against Eresian in 2002. Eresian is quick to point out the connection between Foss and Rodolakis, the acquisition of the claim against him by Hampton, and his service as trustee in Koza's bankruptcy case, and argues that this disturbing coincidence of circumstances raises a serious conflict of interest.

Neither Rodolakis or Foss addresses the conflict issue, and in his affidavit Rodolakis only casually mentions that when Hampton was looking to purchase claims against Eresian, he did request the Koza bankruptcy case file from the Federal Archives. *See* Affidavit of Former Trustee Stephan M. Rodolakis, ¶ 8. Rodolakis admits that he personally reviewed the file for potential claims against Eresian, *id.*, but stops short of discussing how Hampton learned that Koza's pre-bankruptcy claim against Eresian still existed, or whether he gained any advantage for Hampton by serving as Koza's trustee in bankruptcy.

he might not have standing to challenge the closing of the case, Eresian decided to cure that concern by becoming a creditor of Koza, so in December 2002, Eresian and another individual obtained the assignment of a claim from one Elwood Adams, a creditor in Koza's bankruptcy case. However, after going through that exercise, but for reasons still unexplained, Eresian waited more than 4 years to take action in the bankruptcy court.

On September 30, 2003, the Worcester Superior Court ordered Eresian to appear for a deposition at the office of Rodolakis's associate Foss, regarding the collection and satisfaction of Hampton's judgment against him. Eresian ignored the court order to appear, feeling that the superior court lacked personal and/or subject matter jurisdiction over him. He lost that gamble badly when, in a *not so defensive maneuver*, Hampton brought a complaint for contempt against Eresian, which on August 14, 2006, resulted in his being adjudged in civil contempt.

On August 28, 2006, four and one-half years after becoming a creditor of Koza, and literally on the eve of being incarcerated for contempt in the (Hampton) state court proceeding, Eresian went to the bankruptcy court and filed a pleading styled "Emergency Motion to Strike and/or Vacate Order Dismissing Bankruptcy Case *Nunc Pro Tunc*, or in the Alternative For Clarifications and/or Determination as to the Legal Status of the Within Bankruptcy Case in the Bankruptcy Court for the District of Massachusetts." In that motion Eresian argued that the bankruptcy court lacked jurisdiction to close Koza's case in 1993 because Stern, and not Rodolakis, signed the Final Report. Eresian's ultimate goal, of course, is to avoid the acquisition by Hampton of Koza's claim against him, and thereby nullify everything that has transpired in the state court, especially his imminent incarceration for contempt.

On September 7, 2006, after hearing, Judge Rosenthal denied Eresian's Emergency Motion, stating that the Koza bankruptcy case "has been continually closed at all times since October, 29, 1993, and the effect of the closure of the case was to abandon to the Debtor [Koza] the judgment against Mr. Eresian." *See* Doc. No. 33.

On September 18, 2006, on Eresian's motion to reconsider and vacate the order denying his request for emergency relief, Judge Rosenthal denied the motion as untimely filed, under Fed. R. Bankr.P. 9023 and Fed.R.Civ.P. 59(e).[7] On October 10, 2006, Eresian filed a second motion to vacate. To that pleading, the margin order states that the bankruptcy court did not act on the motion, as it was not properly signed,[8] and that "even if the court were to reconsider its order of September 7, 2006, its decision would remain unchanged for the reason set forth on the record at

---

At oral argument, Eresian complained that in 2002, he brought the conflict issue to the attention of the United States Trustee, but that his concerns were either not addressed, or were summarily dismissed. While it would be a stretch to consider the conflict issue as part of the merits of this appeal, the Panel would be remiss in not expressing its disapproval of the Appellees' disregard of their obligation to this, and the other courts involved, to disclose what at least appears to be a substantial conflict of interest.

7. We note, independently, that Eresian failed to allege any new grounds or evidence for the relief he was seeking.

8. The motion and notice of appeal, signed as though they were filed electronically, contain the following in lieu of actual signatures: "/s/ Ara Eresian, Jr." The defect was that both documents were conventionally filed, requiring actual signatures. *See* Fed.R.Bankr.P. 9011; MLBR 9011–1; MEFR App. 8, R. 8.

the September 7, 2006 hearing." Doc. No. 40. Eresian then moved for leave to amend the Motion to Vacate, pursuant to Fed. R. Bankr.P. 9024 and MLBR 9013–1(a). That motion was granted, and Eresian was allowed ten days to amend. Eresian did not make the required amendment, but instead filed an amended notice of appeal which included the Order Taking no Action on the Motion to Vacate.

## JURISDICTION

■ The Panel is duty-bound to determine whether it has jurisdiction before proceeding to a consideration of the merits, even if the issue is not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.,* 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from "final judgments, orders and decrees ... or with leave of court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under § 157 of this title." 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment,'" *Id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)).

■ Here, the Order Denying the Motion to Strike *Nunc Pro Tunc,* etc., and the Order Denying Reconsideration of the Order Denying the Section 59(e) Motion are final, appealable orders. *See In re Bank of New England,* 218 B.R. at 646; *Camacho v. Doral Financial Corp. (In re Camacho),* 361 B.R. 294, 298 (1st Cir. BAP 2007) (explaining that an order denying reconsideration is appealable if the underlying order was final and, if together, the order denying reconsideration and the underlying order end the litigation on the merits).

■ The Order Taking No Action on the Motion to Vacate, however, is not final since it does not address or adjudicate the merits, but merely decided the intervening issue of the validity of Eresian's signature. *See In re Bank of New England,* 218 B.R. at 646. Moreover, the Order clearly fails to come within any of the three exceptions conferring appellate jurisdiction over interlocutory appeals: (1) the collateral order doctrine; [9] (2) the application of the criteria governing § 158(a)(3) review of interlocutory orders; [10] or (3) the Forgay–Con-

---

9. "There exists 'a small class' of decisions, termed 'collateral orders,' 'which finally determine claims of right separable from and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *In re Bank of New England,* 218 B.R. at 649 (citations omitted).

10. "Section 158 provides no express criteria to guide our discretion, but most courts utilize the same standards as govern the propriety of district courts' certification of interlocu-

tory appeals to the circuit courts under § 1292(b)." *In re Bank of New England,* 218 B.R. at 652 (citations omitted). "Section 1292(b) permits appellate review of 'certain interlocutory orders, decrees and judgments ... to allow appeals from orders other than final judgments when they have a final irreparable effect on the rights of the parties.'" *Id.* at 652 n. 17. "To ascertain whether we should exercise our discretion ... we will consider whether (1) the 'order involves a controlling question of law' (2) 'as to which there is substantial ground for difference of opinion,' and (3) whether 'an immediate appeal from the order may materially advance

cord doctrine.[11] *See* 28 U.S.C. § 158(a)(3).

Because the Order Taking No Action on the *Motion to Vacate* is interlocutory, and because it does not fit within any of the three referenced exceptions, it is **DISMISSED.**

### *STANDARD OF REVIEW*

 Appellate courts generally apply the clearly erroneous standard to findings of fact, and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). We review the bankruptcy court's decision denying a motion for reconsideration of a previous judgment for abuse of discretion. *See Mariani–Giron v. Acevedo–Ruiz,* 945 F.2d 1, 3 (1st Cir.1991). A bankruptcy court abuses its discretion if it ignores "a material factor deserving of significant weight," relies upon "an improper factor" or makes "a serious mistake in weighing proper factors." *Granderson v. Carpenter (In re Granderson),* 252 B.R. 1, 5 (1st Cir. BAP 2000) (*quoting Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988)).

### *DISCUSSION*

*The Closing of Koza's Chapter 7 Case:*

Section 350(a) of the Bankruptcy Code requires the court to close a case when the estate has been fully administered and the trustee is discharged. 11 U.S.C. § 350(a). Generally, after the trustee files the Final Report and certifies that the estate has been fully administered, the trustee is discharged of his/her duties. *See* 11 U.S.C. § 704(9); Fed.R.Bankr.P. 5009.

When the trustee files the final report, the U.S. Trustee and other parties in interest have 30 days to object to the report. Fed. R. Bankr.P. 5009; Lawrence P. King, *Collier on Bankruptcy* ¶ 5009.01 (15th Edition Rev.2006) (a court does not become involved in reviewing the final report unless objections are raised, since under 28 U.S.C. § 586, the U.S. Trustee is charged with reviewing a trustee's final report and certifying to the clerk that the estate has been fully administered). If no objection is filed, Rule 5009 provides that the estate is "presumed to have been fully administered" and "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Therefore, upon the closing of the case *without objection,* there is nothing pending before the bankruptcy court.

Also, while it is the trustee's duty to administer and liquidate assets of the bankruptcy estate, any remaining property which is of no value or is exempt from administration, is considered abandoned. 11 U.S.C. § 554; *see Collier on Bankruptcy* ¶ 554.2[7] at 554–59. On the facts of this case, "When there is no court order directing abandonment, the language of [§ 554] subsection (c) *deems abandoned to the debtor any* scheduled property of the estate that is unadministered at the close of the case." (Emphasis in original).

Peter Stern filed the Final Report on October 29, 1993, and there was no objection to its validity or content within the 30

the ultimate termination of the litigation.' " *Id.* at 652.

**11.** "A third concept, labeled the Forgay–Concord doctrine, has been employed to bestow appellate jurisdiction over interlocutory orders when 'irreparable injury' to the ag-

grieved party may attend delaying appellate review until the litigation is over." *In re Bank of New England,* 218 B.R. at 649 n. 8 (citing *In re American Colonial Broad. Corp.,* 758 F.2d at 803.)

day window. As Eresian points out, however, Stern was not the duly appointed trustee in Koza's case. Without really addressing the "wrong trustee" issue, the Appellees, Hampton and Rodolakis, argue that no error was committed by Judge Queenan, that the case terminated in 1993 by virtue of the bankruptcy court order closing it, and that the 1993 order closing the case was ratified in 2006, after hearing, by Judge Rosenthal.

The responsibility to review the accuracy and correctness of a trustee's final report lies with the U.S. Trustee, *see* 28 U.S.C. § 586, and the bankruptcy court intervenes only when an objection is filed. Fed. R. Bankr.P. 5009. There being no objection in this case, all that was left for the bankruptcy court to do was to ministerially enter its order closing the case, and that is what happened. Because the filing of the trustee's final report by a person other than the appointed trustee was not brought to the attention of the bankruptcy court until thirteen years after the event, we agree that the perfunctory bankruptcy court order closing Koza's Chapter 7 case on October 29, 1993, was not a fatal mistake, and that the approval of said order by the bankruptcy judge in September 2006, was neither an error of law nor an abuse of discretion. *See In re Wade*, 991 F.2d 402, 408–09 (7th Cir.1993) (court held the case closed, although the trustee's final report was deemed "interim" and not "final," and because no timely appeal was filed, any defects in the final report were deemed waived).

Alternatively, Eresian argues that should the Panel conclude that the case indeed was closed, then it should be reopened, on the ground that there are assets which Koza failed to list in his schedules, and which have yet to be administered. Eresian, however, provided the bankruptcy court with no evidence of undisclosed assets, and did not even suggest this as an issue below. *In re Crocker*, 362 B.R. 49, 53 (1st Cir. BAP 2007); *In re Bevis*, 242 B.R. 805, 811–12 (Bankr.D.N.H. 1999) (a debtor's failure to disclose an interest at the time its petition is filed does not translate into the case never finally closing under § 350(a)). Instead, it was not until Eresian filed his brief in this appeal that he made unsupported allegations of the existence of a controlling ownership interest in, and the conveyance by Koza of three parcels of real property to a Koza enterprise, within one year of filing his Chapter 7 petition. Appellant's Brief at 25 n. 20. By raising these issues for the first time on appeal, Koza has waived the right to argue them here. *See In re Rauh*, 119 F.3d 46, 50–51 (1st Cir.1997) (issues raised for the first time on appeal, absent exceptional circumstances [not present here], will not be considered); *In re Dolliver*, 255 B.R. 251, 255 (Bankr.D.Me.2000) ("a case is 'closed' for the purposes of § 350(a) and § 727(e)(2) when the court enters its order closing the case, and closure is not subject to an indefinite, undefined extension on account of a debtor's failure to schedule assets.").

*Laches:*

The bankruptcy judge also found that Eresian delayed far too long (13 years from the date of case closing, and 4 years from when he first discovered the alleged "closing defect"), to be afforded the relief he now seeks. *In re Wilding*, 475 F.3d 428, 433 (1st Cir.2007) (bankruptcy judge has discretion to consider laches in determining whether to reopen a case).

Laches applies when (1) plaintiff's delay in bringing suit was unreasonable; and (2) defendant is prejudiced by the delay. *In re Bankvest Capital Corp.*, 375 F.3d 51, 61 (1st Cir.2004) citing *Puerto Rican–American Ins. Co. v. Benjamin*

*Shipping Co., Ltd.,* 829 F.2d 281, 283 (1st Cir.1987). Eresian confirms that in 2002 he was aware that Stern, and not Rodolakis, filed the Trustee Report of No Distribution, and that he took no action in the bankruptcy court to address that issue until August 28, 2006. Additionally, Eresian recognized in 2002 that he lacked standing to proceed in the bankruptcy court, and actually cured that problem by acquiring a claim from one of Koza's creditors. Then, inexplicably, Eresian waited more than four years before questioning the order closing Koza's bankruptcy case. Clearly, the bankruptcy judge recognized that Eresian was hedging his bets between the outcome of the litigation in the state court proceeding, and that of the bankruptcy court. *In re Graves,* 212 B.R. 692, 697 (1st Cir. BAP 1997) ("courts are reluctant to come to the aid of a party who has knowingly slept on his rights under circumstances where he might have earlier asserted such rights in the exercise of due diligence"). During the September 9, 2006, hearing, Judge Rosenthal stated, "you took those positions in the state court knowing that you—that this situation existed, and you—you did that at your peril." Transcript September 9, 2006 at 117. It is also clear that while Judge Rosenthal may not have specifically referenced the term *laches,* there is plenty of support in the record for the Panel to conclude that laches was a prominent factor in Judge Rosenthal's ruling. As Eresian provided no adequate explanation to the bankruptcy judge for his tardiness,[12] and based on the totality of the circumstances before him, the bankruptcy judge's call that Eresian unjustifiably slept on his rights was well founded.

12. Eresian, who is not a licensed attorney, confidently stated during oral argument that it was his choice to appear *pro se* throughout this litigation because he "was comfortable with his knowledge of bankruptcy law and

**CONCLUSION**

For all of the reasons discussed, the Panel concludes that the bankruptcy court did not abuse its discretion or commit reversible error by ruling that Koza's Chapter 7 case was closed on October 29, 1993. The Panel also agrees with the bankruptcy judge's ruling that the case should not be reopened. Accordingly, the Order Denying Eresian's Motion to Strike *Nunc Pro Tunc* and the Order Denying the 59(e) Motion are **AFFIRMED.** The appeal of the Order Taking No Action is **DISMISSED.**

procedure." As it appears frequently in the record, however, his overestimation of the level of his legal expertise and judgment has failed him repeatedly in these, as well as in the state court proceedings.