**In re William Boyce STEDHAM, Debtor.**

**Samuel R. Humphreys, Plaintiff,**

**v.**

**William Boyce Stedham, Defendant.**

**Bankruptcy No. 03–10023.
Adversary No. 05–5088.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Aug. 8, 2005.

891

John Van den Bosch, Charlotte, NC, for Debtor.

Charles Exum, Jackson, TN, for Plaintiff.

Gregory Jordan, Jackson, TN, for Plaintiff.

Marianna Williams, Dyersburg, TN, Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

G. HARVEY BOSWELL, Bankruptcy Judge.

The Court conducted a hearing on the Defendant's Motion for Summary Judgment on June 1, 2005. FED. R. BANKR. P. 9014. Resolution of this matters is a core proceeding. 28 U.S.C. § 157(b)(2). The Court has reviewed the testimony from the hearing and the record as a whole. This Memorandum Opinion and Order shall serve as the Court's findings of facts and conclusions of law. FED. R. BANKR. P. 7052.

### I. FINDINGS OF FACT

At issue in this case is the debtor's failure to list a collection of antiques known as the "Bray Collection," ("collection"), as an asset on his bankruptcy schedules. According to the Plaintiff in this matter, Samuel Humphreys, ("Humphreys"), the collection has an estimated

value of around $150,000.00. Prior to the debtor's chapter 7 filing, Humphreys filed a state court lawsuit against William Boyce Stedham, ("Stedham" or "debtor") and Douglas Hudson, ("Hudson"). Humphreys alleged in that lawsuit that Stedham and Hudson had breached a contract and committed negligence in the purchase and sale of the antiques collection at issue.

Stedham filed his chapter 7 petition on January 3, 2003. He listed Humphreys on his schedule F as an unsecured, non-priority creditor with a claim of $20,000.00. He also listed the state court lawsuit on his statement of financial affairs. Humphreys was the only creditor listed on the petition and matrix.

Stedham listed four assets on his petition: a checking account worth $100.00; "miscellaneous household items" worth $1,000.00; "wearing apparel" worth $300.00; and a 1998 Ford F150 worth $2,050.00. Stedham claimed an exemption in the checking account, wearing apparel and the Ford.

The Bankruptcy Court Clerk's Office issued the "Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors and Fixing of Dates" in the case on January 9, 2003. The notice plainly states that the deadline to file a complaint objecting to the discharge of the debtor or to determine the dischargeability of certain debts was April 14, 2003. Pursuant to the certificate of service in the file, Humphreys was served with a copy of this notice on January 13, 2003. Humphreys did not dispute that he received the notice. The meeting of creditors in the case was conducted on February 25, 2003. At the hearing in this mat-

ter, the debtor's attorney stated that Humphreys' attorneys were present at the 341 meeting and had every opportunity to ask Stedham questions. Humphreys did not dispute this assertion.

The chapter 7 trustee filed her no asset report on February 28, 2003, and the case was discharged on April 17, 2003. The certificate of service for the discharge order shows that Humphreys was served with a copy of the discharge order on April 21, 2003. The final decree was issued and the case was closed on May 1, 2003.

Approximately five and a half months after the debtor's discharge, Humphreys filed a motion to reopen the debtor's case for purposes of finding the debt "nondischarged."[1] Humphreys did not specify what particular debt he was seeking to except from the debtor's discharge, nor did he state under which particular section of the Bankruptcy Code he was seeking a "nondischarged" determination.[2] What he did allege, however, was that the debtor failed to schedule the antiques collection on his chapter 7 petition. At the time the motion was filed, the collection allegedly had a value of approximately $150,000.00. Humphreys asserted that the debtor should turn the collection over to the chapter 7 trustee so that she could administer the collection for the benefit of the creditors of the estate. In paragraph four of the motion, Humphreys states that "recently acquired information" from the state court lawsuit "has shown that the Debtor knowingly and fraudulently misrepresented his assets at the meeting of his creditors and on his bankruptcy schedules."

---

1. "Motion to reopen" docket number 12, filed October 3, 2003.

2. Once the debtor filed his bankruptcy petition, Humphreys did not continue to judg-

ment in the state court lawsuit against Stedham. He did, however, continue to judgment against Hudson.

The debtor filed an objection to the motion to reopen on October 28, 2003. Stedham alleged that it would be improper to reopen the case for purposes of a non-dischargeability determination because Humphreys had received notice of the deadline to object to dischargeability on January 13, 2003, and he did not exercise his rights prior to the deadline on April 14, 2003. Stedham also alleged that Humphreys had not demonstrated any justification for the delay in seeking a non-dischargeability determination.

The "Motion to Reopen" was originally set for a hearing on October 29, 2003, but was continued nine times and was not actually heard until August 16, 2004. In his response to the debtor's motion for summary judgment, Humphreys' attorney asserted that "[o]n numerous occasions, Defendant's attorney delayed this Court from hearing the Motion to Reopen, such as asking for continuances." [3] Based on that allegation, the Court went back and reviewed the recordings from each date a continuance was requested. It is clear from these recordings that both parties agreed to each continuance. In fact, one of Humphreys' attorneys, Charles Exum, was the party who stood at the podium and asked the Court to continue the motion on three separate occasions. [4]

At the August 16, 2004, hearing, the Court granted Humphreys' "Motion to Reopen." The "Order Granting Motion to Reopen" was entered on August 20, 2004. The body of the order reads:

"[T]his Court finds that sufficient cause exists to reopen the above-styled Chapter 7 case to reappoint the standing Chapter 7 Trustee, Marianna Williams, to investigate the Debtor's apparent failure to list or otherwise disclose all of the Debtor's assets."

Since the reopening of the case, the trustee has not filed any type of pleading demonstrating what efforts, if any, she has made to investigate the debtor's failure to list all of his assets. The trustee also has not filed any type of report which demonstrates she has discovered hidden or omitted assets.

Although the case was reopened in August 2004, the plaintiff in this matter did not file any type of complaint against the debtor until April 6, 2005. On that date, Humphreys filed a "Complaint to Set Aside Discharge" in which he asked the Court to revoke the debtor's discharge under 11 U.S.C. § 727(d)(1) and/or § 727(d)(2). As grounds for this request, Humphreys alleged that Stedham obtained his discharge through fraud in violation of § 727(d)(1) and that the debtor obtained property which he failed to report or turn over to the trustee in violation of § 727(d)(2).

The first major fact set forth in Humphreys' complaint is that Stedham failed to list the antique collection on his bankruptcy schedules. Stedham does not dispute the fact that he did not list the antiques on his schedules and a cursory review of his

---

**3.** "Plaintiff's Response to Defendant's Motion for Summary Judgment," docket number 10, filed on May 26, 2005.

**4.** Exum appeared on February 18, 2004, March 3, 2004, and April 7, 2004, and asked the Court to continue the hearing on the motion to reopen. It is not clear from the recordings whether or not Exum was present at the other hearing dates, but on those days, Stedham's attorney always stated that he had

spoken to Exum and that they had agreed to continue the matter. On those dates when Exum appeared, he made comments that indicated he had been working with Van den Bosch throughout the entire time the motion had been continued in an effort to resolve the matter. This leads the Court to believe that Exum had in fact agreed to and been aware of all of the requests for continuances.

petition demonstrates that the collection was indeed omitted. The second major fact set forth in the complaint is that despite the fact that the state court had issued a temporary injunction on December 4, 2002, ordering Stedham and Hudson to stop selling or otherwise disposing of the antique collection at issue, Stedham continued to sell the antique collection on ebay both prior to and after filing for bankruptcy relief. Stedham neither admitted nor denied that an injunction was issued nor did he admit or deny that he continued selling antiques after November 2002.

In part, Humphreys based his allegations of the debtor's fraud on three depositions he took in connection with the state court lawsuit: (1) the deposition of Gail Ann Stedham taken on February 3, 2003; (2) the deposition of William Jackson taken on April 21, 2003; and (3) the deposition of Steve Conner taken on June 20, 2003. Although select pages from each deposition were attached as exhibits to Humphreys' complaint, he did not introduce the depositions into evidence at the hearing on Stedham's motion for summary judgment. Stedham objected to the allegations in the complaint; however, he never disputed the fact that the depositions were taken. Stedham also never alleged that the pages attached to the complaint were inaccurate transcripts of the deposition questions and answers. For this reason, the Court is including some of the information from the first two depositions in this opinion; however, in so doing, the Court is not making any findings regarding the veracity of the statements contained therein. Instead, the Court is including the questions and

answers to demonstrate what the plaintiff knew and at what point in the litigation the plaintiff had this knowledge.

The deposition of Gail Ann Stedham was taken on February 3, 2003, two months prior to the debtor's discharge. Gregory Jordan, ("Jordan"), conducted the questioning at Gail Stedham's deposition. Jordan represented Humphreys in the state court lawsuit as well as in all proceedings in this Court. Humphreys was also present at the deposition. During the course of the questioning, Jordan asked Gail Stedham "[h]ave you had in your possession, or do you have now, any documentation that identifies or describes or in any way lists the antique collection [Stedham] bought called the Bray collection?"[5] In response to that question, Gail Stedham shook her head no. Jordan also asked Gail Stedham if she knew whether or not Stedham had sold antiques on ebay since November 26, 2002.[6] Gail Stedham replied "he sells, as far as I know, every day."

The deposition of William Jackson was taken on April 21, 2003. Jordan conducted the questioning at the deposition and Humphreys was present. During the course of the deposition, Jordan asked Jackson about some pedal cars which were part of the antique collection Stedham had purchased. Jackson stated that Stedham had asked him to list the pedal cars on ebay under Jackson's account. When Jackson asked Stedham why he could not list them for sale under his own account, Stedham allegedly replied that he did not want the person he bought the cars from originally to find out how much the cars were really worth.[7] According to Jack-

5. "The Deposition of Mrs. Gail Ann Stedham," page 7, lines 10—13, "Complaint to Set Aside Discharge," exhibit 1.

6. "The Deposition of Mrs. Gail Ann Stedham," page 47, lines 11—12, "Complaint to

Set Aside Discharge," exhibit 1, docket number 1.

7. "The Deposition of Mr. William E. Jackson," page 23, lines 3—14, "Complaint to Set Aside Discharge," exhibit 2, docket number 1.

son's statements in the deposition, Stedham had purchased the eight pedal cars for a total of $400.00. Some of the cars were allegedly worth considerably more than that. Jackson eventually agreed to list the cars under his account in exchange for a 20% commission. When asked by Jordan if he had delivered the proceeds of the sales to Stedham since February 24, 2003, Jackson replied "yes." [8]

Humphreys alleges that Stedham's discharge should be revoked under 11 U.S.C. § 727(d)(1) because the debtor failed to list the Bray collection, as well as other items, on his petition and that "[t]he Plaintiff had no knowledge of the Defendant's fraud regarding the Bray Collection, the antiques and collectibles in his storage facility, and the wardrobe until after the discharge of the Defendant." [9] Humphreys also alleges that Stedham's discharge should be revoked under 11 U.S.C. § 727(d)(2) because Stedham refused to list the Bray collection as an asset and failed to turn the collection over to the trustee for administration.

In response to Humphreys complaint, Stedham filed a "Motion for Summary Judgment" on May 11, 2005. Stedham alleges that the undisputed facts demonstrate that Humphreys cannot seek revocation of the discharge for two reasons. First, Humphreys had notice of the dischargeability deadline and did not object to the debtor's discharge prior to that deadline; therefore, Humphreys is barred from objecting to it now. Secondly, Stedham alleges that Humphreys' complaint to revoke discharge was filed untimely under 11 U.S.C. § 727(e).

Humphreys filed a response to Stedham's "Motion for Summary Judgment" on May 26, 2005, in which he alleged his complaint was timely under 11 U.S.C. § 727. Humphreys asserted four grounds as support for this allegation. First, Humphreys conceded that 11 U.S.C. § 727(e)(1) limits requests for revocation of discharge under 11 U.S.C. § 727(d)(1) to one year after a discharge is granted; however, Humphreys alleged that when a debtor acts with intent to hinder, delay and defraud a creditor, the time limit under § 727(e)(1) is equitably tolled and does not begin to run until the debtor's fraud is discovered. Humphreys cited the U.S. Supreme Court case of *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 90 L.Ed. 743 (1946), as well as the case of *Caughey v. Succa (In re Succa)*, 125 B.R. 168 (Bankr.W.D.Tex.1991), as authority for this position. Humphreys asserted that in failing to list the Bray antique collection on his petition, along with several other items, Stedham violated § 727(d)(1). Humphreys further asserted that he did not learn of the debtor's fraud until after the Court granted his discharge.

Despite his claims that he was unaware of Stedham's fraud prior to the debtor's discharge, Humphreys made several statements in his response to the motion for summary judgment which seem to contradict this assertion. First, Humphreys alleged in paragraph 7 of his response that "[d]uring the discovery phase of the Lawsuit, Plaintiff discovered missing assets that were not listed in Defendant's bankruptcy schedules. This discovery included, but was not limited to, the depositions of the Defendant's wife, Gail Stedham,...." [10] Humphreys further alleged in

---

**8.** "The Deposition of Mr. William E. Jackson," page 45, lines 5—17, "Complaint to Set Aside Discharge," exhibit 2, docket number 1.

**9.** "Complaint to Set Aside Discharge," docket number 1.

**10.** "Plaintiff's Response to Defendant's Motion for Summary Judgment," ¶ 7, docket number 10.

paragraph 8 of his response that "[i]t was from [the depositions of Gail Stedham, Steve Conner and William Jackson] that Plaintiff came to realize that Defendant had failed to disclose numerous assets from the Bray Collection . . . ." [11]

As the second grounds for his assertion that his complaint was timely filed, Humphreys alleged that the time limits under § 727(d)(2) were also equitably tolled by the debtor's fraud. Again, Humphreys conceded that the time limit for bringing a § 727(d)(2) action is the later of either "one year after the granting of such discharge; and the date the case is closed." 11 U.S.C. § 727(e)(2); however, when a debtor fraudulently conceals assets, Humphreys alleges that the one year from the date of discharge time limit is tolled until the fraud is discovered. Humphrey cited the cases of *Dwyer v. Peebles (In re Peebles)*, 224 B.R. 519 (Bankr.D.Mass.1998) and *In re Succa*, 125 B.R. at 168, as well as the Supreme Court's *Holmberg* case, as authority for this position.

As the third ground for his assertion that the revocation complaint was timely filed in this case, Humphreys asserted that the time limit under 11 U.S.C. § 727(e)(2)(B) had not yet run because the case was never properly closed. Humphreys relied on the *Peebles* and *Succa* cases as authority for this position. The rationale of this view is based on the language of 11 U.S.C. § 350(a) which states that a bankruptcy court shall close a debtor's case "after the estate is fully administered." When a debtor fails to schedule an asset, it remains unadministered; therefore the estate is not fully administered and cannot be properly closed.

As the fourth and final ground for his timely filed assertion, Humphreys alleged

that because the motion to reopen was filed within the time limits of § 727(e), the § 727(d) claims are tolled. Humphreys cited the cases of *In re Johnson*, 187 B.R. 984 (Bankr.S.D.Cal.1995), *In re Fresquez*, 167 B.R. 973 (Bankr.D.N.M.1994), and *In re Beltz*, 51 B.R. 84 (Bankr.S.D.Ohio 1985) as authority for this assertion. According to Humphreys, there are two ways in which this works. First, when a case is reopened for purposes of revoking the discharge within one year from the date the case is closed, the time limits of § 727(e)(2) are tolled because the case is no longer closed under § 727(e)(2)(B). Secondly, when motions are filed which put a debtor on notice that the plaintiff may move for revocation of the discharge but the actual complaint is not filed until after the time limits under § 727(e) have expired, courts allow the complaint to relate back to the motion which was filed timely.

In the case at bar, Humphreys alleges that the motion to reopen was filed within the time limits of § 727(e), but due to numerous continuances, it was not heard until after expiration of the § 727(e) time limits. As a result, the complaint to revoke discharge could not be filed within § 727(e)'s time constraints and the Court should allow the complaint to relate back to the motion to reopen. Humphreys further asserted that this relation back would be proper because the motion put the debtor on notice of the possible revocation action.

## II. CONCLUSIONS OF LAW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

---

**11.** "Plaintiff's Response to Defendant's Motion for Summary Judgment," ¶ 8, docket number 10.

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 352 (6th Cir.2004) (citing FED. R. CIV. P. 56(c).) When considering a motion for summary judgment, the court must view all facts, evidence and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir.2001). In the case at bar, there are some factual disputes about the debtor's assets and his disclosure of those assets; however, the issue currently before the Court is whether or not the Plaintiff's complaint was filed timely. Because the parties do not dispute any of the filing dates in the case, the Court finds that the matter is ripe for summary judgment.

### A. 11 U.S.C. § 727(d)(1)

Section 727(d) of the Bankruptcy Code provides that:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

11 U.S.C. § 727(d)(1). A proceeding to revoke a discharge must be initiated by filing an adversary complaint. FED. R. BANKR. P. 7001. The party seeking revocation bears the burden of proof by a preponderance of the evidence. *Buckeye Retirement Co v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr.E.D.Tenn.2003). "Revocation of a debtor's discharge is an extraordinary remedy, so § 727(d) is liberally construed in favor of the debtor and strictly

construed against the party seeking revocation." *Heil*, 289 B.R. at 903.

Under § 727(d)(1), it is the debtor's fraud in obtaining the discharge that qualifies as grounds for revocation and not the debtor's fraud vis-a-vis the creditor. *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr.N.D.Ohio 2004) ("... [Section] 727(d)(1) contemplates the type of fraud that ... would have prevented the debtor from receiving a discharge in the first place."); *Guadarrama*, 284 B.R. at 469; *Lawrence Nat'l. Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir.1991); *First Nat'l Bank of Harrisburg v. Jones (In re Jones)*, 71 B.R. 682, 684 (S.D.Ill.1987); *Tighe v. Valencia (In re Guadarrama)*, 284 B.R. 463, 469 (C.D.Cal. 2002); *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 925 (9th Cir. BAP 1994). A creditor seeking to revoke a discharge under § 727(d)(1) must prove that the debtor "committed fraud in fact, not fraud in law, or implied fraud." *Heil*, 289 B.R. at 903. The intentional omission of assets from the debtor's schedules has been found to qualify as grounds for revocation of a discharge under § 727(d)(1). 6 Lawrence P. King, et. al., *Collier on Bankruptcy*, ¶ 727.16[2] (15th ed. rev.1999).

In order to succeed on a 727(d)(1) claim, the moving party must prove that (1) the debtor procured his discharge by fraud and (2) that the movant was unaware of the debtor's fraud prior to the discharge. *In re Eppers*, 311 B.R. 826, 831 (Bankr.D.N.M.2004); *Kaler v. Olmstead (In re Olmstead)*, 220 B.R. 986, 993–97 (Bankr.D.N.D.1998); *Swartz v. Spears (In re Spears)*, 291 B.R. 825, 828 (Bankr. C.D.Ill.2003). A party made aware of the fraud prior to discharge may not seek revocation. 6 Lawrence P. King, et. al., *Collier on Bankruptcy*, ¶ 727.16[1] (15th ed. rev.1999); *see also, Heil*, 289 B.R. at 903; *Staten Island Savings Bank v. Scar-*

*pinito (In re Scarpinito)*, 196 B.R. 257, 267 (Bankr.E.D.N.Y.1996); *Anderson v. Vereen (In re Vereen)*, 219 B.R. 691 (Bankr.D.S.C.1997); *Miller–Claborn Distribution, Co., Inc. v. Richard (In re Richard)*, 165 B.R. 642, 643 (Bankr.W.D.Ark. 1994); *In re Lyons*, 23 B.R. 123, 125–26 (Bankr.E.D.Va.1982); *In re Edmonds*, 924 F.2d 176 (10th Cir.1991); *In re Dietz*, 914 F.2d 161 (9th Cir.1990).

In the case of *Mid–Tech Consulting, Inc. v. Swendra (In re Swendra)*, the Eighth Circuit was faced with deciding the scope of the "did not know" requirement under § 727(d)(1). In that case, the debtors obtained a discharge on December 15, 1987. Sometime thereafter, one of their creditors in the chapter 7 case, Mid–Tech Consulting, filed a revocation complaint against the debtors under § 727(d)(1). In their complaint, Mid–Tech alleged that the debtors had fraudulently failed to list several assets on their bankruptcy schedules, most importantly a lake cabin. Mid–Tech admitted that they learned about the concealment during the pendency of the case, but did not obtain evidence of it until two days after the Swendras' discharge was granted. After conducting a hearing, the bankruptcy court found that Mid–Tech did have knowledge of the alleged omission prior to the granting of the Swendras' discharge and, based on that finding, dismissed Mid–Tech's complaint. The district court affirmed the dismissal and Mid–Tech appealed.

On appeal, Mid–Tech alleged that a creditor must know all the facts that constitute the alleged fraud before dismissal under § 727(d)(1) is appropriate. The Swendras, on the other hand, alleged that dismissal under § 727(d)(1) is appropriate so long as the creditor knew facts that indicated a possible fraud prior to discharge. The 8th circuit agreed with the debtors and held "that dismissal of a § 727(d)(1) revocation action is proper where, before discharge, the creditor knows facts such that he or she is put on notice of a possible fraud." *Swendra*, 938 F.2d 885, 888 (8th Cir.1991). In support of its finding that "the burden is on the creditor to investigate diligently any possibly fraudulent conduct before discharge," the *Swendra* court reasoned:

> By placing this burden on the creditor, we ensure that situations such as the one before us will be avoided in the future. In this case, Mid–Tech knew of the cabin and its omission from the bankruptcy schedules, before discharge. Instead of thoroughly investigating the status of the lake cabin and the Swendras' stock, and then promptly bringing any fraud to the bankruptcy court's attention, Mid–Tech waited until after discharge. In seeking to revoke the discharge in a separate proceeding when the matter could have been handled before discharge in the original bankruptcy case, Mid–Tech has squandered the resources of the parties and the courts.

*Id.*

The majority of courts faced with deciding the "did not know" requirement of § 727(d)(1) have agreed with the *Swendra* court and found that "the party seeking revocation of the discharge must not have known sufficient facts regarding the Debtor's actions and/or omissions 'such that [it was] put on notice of a possible fraud.'" *Heil*, 289 B.R. at 903 (citing *Swendra*, 938 F.2d at 888); *Anderson v. Vereen (In re Vereen)*, 219 B.R. 691, 696 (Bankr.D.S.C. 1997) ("... in a revocation action under § 727(d)(1), the plaintiff must show due diligence in investigating and responding to possible fraudulent conduct once he or she is aware of it or is in possession of facts such that a reasonable person in his or her position should have been aware of a possible fraud."); *Tighe v. Valencia (In*

re Guadarrama), 284 B.R. 463, 477–78 (C.D.Cal.2002) ("Discovery of fraud for purposes of § 727(d) occurs when one 'obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge.' ") (citation omitted); *State Bank of India v. Kaliana (In re Kaliana)*, 202 B.R. 600, 604 (Bankr.N.D.Ill.1996) ("If the creditor could have known of the alleged fraud, it has an affirmative duty to so investigate before the discharge is granted or the court will dismiss the requested revocation."); *Wood v. Cochard (In re Cochard)*, 177 B.R. 639, 643 (Bankr.E.D.Mo.1995); *West Suburban Bank of Darien v. Arianoutsos (In re Arianoutsos)*, 116 B.R. 116, 118–19 (Bankr.N.D.Ill.1990); *Bear Stearns & Co. v. Stein (In re Stein)*, 102 B.R. 363, 367–68 (Bankr.S.D.N.Y.1989); *Citibank v. Emery (In re Emery)*, 201 B.R. 37, 41 (E.D.N.Y.1996); *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 925 (9th Cir. BAP 1994).

■ In the case at bar, it is undisputed that Stedham failed to list the Bray collection on his bankruptcy schedules; however, it is also clear that Humphreys had knowledge of this omission, and knowledge of the fact that the debtor may have been guilty of fraudulent conduct with regard to this asset, prior to the granting of Stedham's discharge. Humphreys was listed on Stedham's petition and matrix as a creditor and the state court lawsuit was listed on Stedham's statement of financial affairs. Humphreys received notice of the commencement of Stedham's case from the Court and thereby was informed of the 341 meeting of creditors date and the deadline for filing complaints to determine dischargeability. Stedham's attorney stated at the hearing in this matter that Humphreys' attorneys were present at the meeting of creditors. Humphreys did not dispute this allegation.

According to Humphreys' complaint to set aside the discharge, the state court lawsuit Stedham listed on his petition was based solely on breach of contract and negligence claims arising out of the purchase of the antiques collection. Paragraph 7 of the complaint states that on December 4, 2002, the state court issued a temporary injunction ordering the debtor to stop selling or otherwise disposing of the collection. Humphreys attached select pages from Gail Stedham's February 3, 2003, deposition as Exhibit 1 to his complaint. Both Humphreys and his attorney Gregory Jordan were present at this deposition and Jordan asked Gail Stedham whether or not she had any type of documentation that described the "antique collection [Stedham] bought called the Bray collection?" Jordan also asked her if she knew if Stedham had been selling antiques on his ebay account since late 2002.

Based on these facts, it is clear that Humphreys had knowledge of information sufficient to put him on notice that Stedham may have been attempting to obtain his discharge fraudulently prior to the April 17, 2003, date of discharge. When Humphreys received notice of Stedham's bankruptcy case, he or his attorneys should have reviewed the petition to make sure the antiques collection was listed as an asset particularly in light of the fact that Stedham disclosed the state court lawsuit on his statement of financial affairs. According to Humphreys' own pleadings, this lawsuit was based solely on the debtor's acquisition and alleged disposition of the antiques collection. If a debtor lists a lawsuit which is based solely on his possession of a particular item of property, but fails to list that property as an asset, that should put the creditor on immediate notice that the debtor may be

attempting to fraudulently conceal property from the Court and his creditors. This is especially true when a temporary injunction had already been issued to the debtor ordering him to stop disposing of the asset.

Additionally, the selected pages of Gail Stedham's deposition conclusively prove that, prior to Stedham's discharge, Humphreys knew Stedham had purchased the collection and was selling parts of it on ebay. In paragraph 7 of his response to the debtor's motion for summary judgment, Humphreys states that he discovered the missing assets "during the discovery phase of the Lawsuit .... This discovery included, but was not limited to, the depositions of the Defendant's wife, Gail Stedham ...." Humphreys took Gail Stedham's deposition on February 3, 2003, ten weeks prior to the bar date for the filing of dischargeability complaints.

As a result of the fact that Humphreys had knowledge of the debtor's alleged fraud prior to the debtor's discharge, the Court finds that Stedham is entitled to summary judgment on the issue of whether the plaintiff may proceed under 11 U.S.C. § 727(d)(1). Humphreys is not entitled to a revocation of the debtor's discharge under § 727(d)(1) and may not proceed against the debtor under that section.

## B. 11 U.S.C. § 727(D)(2)

Section 727(d) of the Bankruptcy Code provides that:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

11 U.S.C. § 727(d)(2). As with a proceeding under § 727(d)(1), a § 727(d)(2) action must be initiated by filing an adversary complaint. FED. R. BANKR. P. 7001. The party seeking revocation bears the burden of proof by a preponderance of the evidence. *Buckeye Retirement Co v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr. E.D.Tenn.2003). "Revocation of a debtor's discharge is an extraordinary remedy, so § 727(d) is liberally construed in favor of the debtor and strictly construed against the party seeking revocation." *Heil*, 289 B.R. at 903. A proceeding to revoke a discharge under § 727(d)(2) must be brought before the later of (1) one year after the granting of the discharge or (2) the date the case is closed. 11 U.S.C. § 727(e)(2).

Humphreys has alleged that there are two reasons why his complaint should be considered timely under § 727(d)(2). First, Humphreys asserts that the time limits under § 727(e)(2) are subject to the doctrine of equitable tolling. Secondly, Humphreys asserts that the time to request revocation under § 727(e)(2) had not expired as of the filing of their complaint because the case was never properly closed.

### 1. Equitable Tolling

■ The first of the grounds Humphreys cites as justification for his argument that his complaint was timely filed under § 727(e)(2) is the doctrine of equitable tolling which was articulated by the United States Supreme Court in the case of *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Pursuant to this doctrine:

[W]here a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence of care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

*Holmberg,* 327 U.S. at 397, 66 S.Ct. 582 (citing *Bailey v. Glover,* 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874)). The *Holmberg* Court went on to state that the equitable tolling doctrine "is read into every federal statute of limitation." *Id*[12] The majority of courts faced with deciding the issue of whether or not the doctrine of equitable tolling applies to 11 U.S.C. § 727(e)(2) have found that it does not. *Towers v. Boyd (In re Boyd),* 243 B.R. 756, 764 (N.D.Cal.2000); *Hadlock v. Dolliver (In re Dolliver),* 255 B.R. 251, 257 (Bankr. D.Me.2000); *Dahar v. Bevis (In re Bevis),* 242 B.R. 805, 810 (Bankr.D.N.H.1999); *Apex Wholesale, Inc. v. Blanchard (In re Blanchard),* 241 B.R. 461, 464 (Bankr. S.D.Cal.1999); *Davis v. Johnson (In re Johnson),* 187 B.R. 984, 988 (Bankr. S.D.Cal.1995); *Malloy v. Frank (In re Frank),* 146 B.R. 851, 853 (Bankr.N.D.Okl. 1992).

In his response to the debtor's motion for summary judgment, Humphreys cited the cases of *Dwyer v. Peebles (In re Peebles),* 224 B.R. 519 (Bankr.D.Mass.1998) and *Caughey v. Succa (In re Succa),* 125 B.R. 168 (Bankr.W.D.Tex.1991) as support for his assertion that equitable tolling does apply to § 727(e)(2). In the *Peebles* case, the debtor received his chapter 7 discharge on May 4, 1995, and the case was closed on May 8, 1995. Nearly three years later, the chapter 7 trustee filed a complaint seeking to revoke the discharge under 11 U.S.C. § 727(d)(2) based on the debtor's alleged failure to disclose and turnover certain assets of the estate. The debtor moved to dismiss the complaint as untimely under § 727(e)(2). Although the court decided that the complaint was timely based on the fact that the case was never properly closed under 11 U.S.C. § 350, the *Peebles* court went on to find that the equitable tolling doctrine should be read into § 727(e)(2). *Id.* at 523. In analyzing whether or not § 727(e)(2)'s time limits were in fact equitably tolled in the case before it, the *Peebles* court stated that "the trustee must prove, with respect to each of her causes of action under § 727(d)(2), that she remained unaware of them until one year or less from the date on which she filed her complaint." *Id.*

In the case at bar, the Court finds it unnecessary to decide whether or not the time limits of § 727(e)(2) were equitably tolled by the debtor's alleged fraud. The facts in this case clearly demonstrate that Humphreys had knowledge of the debtor's alleged fraud prior to the granting of Stedham's discharge. Prepetition, Humphreys sued the debtor for negligence and breach of contract arising from the purchase and sale of the items in the Bray collection. Humphreys received notice of Stedham's chapter 7 filing and notice of the bar date for objecting to the dischargeability of a debt. Humphreys' attorneys were present at Stedham's meeting of creditors. Humphreys took Gail Stedham's deposition on

---

**12.** Although not important for purposes of this opinion, the Court would like to point out that recent cases have suggested that the Supreme Court's view of equitable tolling is not as liberal as the statement in Holmberg suggests. *United States v. Beggerly,* 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) "Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute."; *United States v. Brockamp,* 519 U.S. 347, 350–54, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997).

February 3, 2003, two months prior to the debtor's discharge. During the course of that deposition, Humphreys' attorney asked Gail Stedham if she had any documentation which listed the antiques collection Stedham "bought called the Bray collection?" Humphreys' attorney also asked Gail Stedham if she knew whether or not he was continuing to sell items from the collection on ebay.

It is clear from these facts that Humphreys knew about the debtor's ownership of the Bray collection and knew that Stedham had failed to list the collection as an asset on his schedules prior to the debtor's discharge. In fact, Humphreys had notice of the debtor's alleged knowing and fraudulent failure to disclose his ownership interest in the antiques prior to the April 14, 2003, deadline to file a complaint objecting to dischargeability. Because Humphreys discovered the fraud prior to the debtor's discharge, the time limits of § 727(e)(2) were not tolled in any way.

Pursuant to § 727(e)(2), Humphreys had one year from the date of Stedham's discharge to file his request to revoke the discharge. Humphreys did not file his motion to reopen Stedham's case until October 3, 2003, some five and a half months after discharge. Once the case was reopened, Humphreys waited another seven and a half months to file his complaint to revoke the discharge so that a total of nearly twenty-four months had elapsed between the granting of the discharge and the filing of the complaint. The Court is aware that the motion to reopen was continued several times and not granted until August 16, 2004; however, even if the Court were to find that § 727(e)(2)'s time limits were tolled while the motion to reopen was pending, Humphreys still waited a total of thirteen months between the discharge in the case and the filing of his complaint to revoke Stedham's discharge.

## 2. 11 U.S.C. § 350(a)

The second basis for Humphreys' assertion that his § 727 complaint was timely filed is that the case was not properly closed; therefore, once the case was reopened, the time limits under § 727(e)(2) were suspended. This argument is based on the interplay of 11 U.S.C. §§ 350(a) and § 727(e)(2). Section 727(e)(2) states that a complaint to revoke discharge under § 727(d)(2) must be brought by the later of (1) one year from the date of discharge or (2) the date the case is closed. 11 U.S.C. § 727(e)(2). Section 350(a) states that a case shall be closed after the estate is fully administered and the trustee has been discharged. 11 U.S.C. § 350(a). Humphreys asserted in his response to the motion for summary judgment and at the hearing in this matter that an estate is only validly closed once the trustee has administered all of the debtor's assets. If a debtor fails to disclose assets, he allegedly prevents the trustee from fully administering the estate so the case cannot be properly closed under § 350(a). Humphreys further asserted that when the case is then reopened to administer the assets, the time limit under § 727(e)(2) is tolled. This argument is based on the allegation that in a situation such as this the "later" date under § 727(e)(2) is the closing of the case which does not occur until the case is "properly" closed.

As support for his argument, Humphreys cited *In re Peebles*, 224 B.R. at 520. As discussed supra, the debtor in *Peebles* received his chapter 7 discharge on May 4, 1995, and the case was closed on May 8, 1995. The trustee did not file her complaint to revoke discharge, in which she alleged that the debtor had failed to disclose and turnover certain assets, until April 6, 1998. The trustee argued that her

complaint was timely filed because the case was never properly closed for purposes of § 727(e)(2). The *Peebles* court agreed with the trustee and held:

> Under [§ 350(a)], a case is properly and validly closed only *after* the trustee has fully administered the assets of the estate. Moreover, when the debtor has failed to disclose an asset in accordance with § 521(1) of the Code and the Trustee has not otherwise administered it, the asset is not, upon the closing of the case, deemed abandoned or administered for purposes of § 350, as it would be if the asset were properly disclosed.... Rather, the asset remains property of the estate even after the case is closed.... And the case may be reopened to administer the asset....Therefore, a case is not properly or finally closed until the assets of the estate are fully administered; and the Debtor's failure to schedule the assets at issue in this proceeding resulted in their remaining unadministered upon the closing of the case.

*Id.* at 521 (citations omitted). Prior to the *Peebles* holding, one other court had found that when a case is reopened to administered undisclosed assets, the time limits under § 727(e)(2) are tolled. *Succa,* 125 B.R. at 171.[13]

The vast majority of the courts which have addressed the issue of whether or not an improperly closed case tolls the running of § 727(e)(2)'s time limits have found that it does not. *Bevis,* 242 B.R. at 812; *Dol-*

*liver,* 255 B.R. at 254–255; *Boyd,* 243 B.R. at 764; *Blanchard,* 241 B.R. at 466. These courts hold that when determining whether a § 727(d)(2) complaint was timely filed, a court must look to the date the case was originally closed. The reopening of the case has no effect on the relevant § 727 deadlines. The *Bevis* court aptly summed up the weakness of the *Peebles* reasoning:

> This Court respectfully disagrees with the view espoused by Judge Kenner in Peebles. Such an approach appears to strip § 727(e)(2) of much of its substance. Under the Peebles approach, if a debtor fails to schedule an asset, the case can never properly be closed, thereby rendering any future § 727(d) action timely *ad infinitum.* This view essentially renders a time-limiting statutory provision with no outside time limit for many cases, a result that this Court concludes cannot be what Congress intended.

> .    .    .    .    .

> The Peebles approach also suffers from the same finality infirmities discussed above in connection with the issue of whether §§ 727(e)(1) and (e)(2) are subject to equitable tolling. By creating a mechanism by which a § 727(d)(2) action may be pressed many years following the issuance of a discharge order, the finality of such an order is weakened. At some point, a debtor should be confi-

---

13. In the case of *Davis v. Johnson (In re Johnson),* 187 B.R. 984, 988 (Bankr.S.D.Cal. 1995), the court found that the reopening of a case within one year from the date of closing interrupted the running of the limitations period under § 727(e)(2); however, the *Johnson* court based its decision on the reasoning that "if the case is reopened within one year from the closing, the case is no longer closed and the running of the one year period should be tolled." It appears from analyzing the opin- ion that the Johnson court may have misread § 727(e)(2) to say that a request for revocation under § 727(d)(2) must be brought within the later of one year from (1) the discharge date or (2) the date the case is closed. It is clear from reading § 727(e)(2) that the "one year from" phrase only applies to the discharge date so that "the later of" is (1) one year from the discharge date or (2) the date the case is closed.

dent in knowing that his or her discharge order is free from attack. The Peebles approach, like reading equitable tolling into §§ 727(e)(1) and (e)(2), weakens such confidence.

*Bevis,* 242 B.R. at 812. In *In re Dolliver,* the court agreed with the *Bevis* reasoning and added:

> ...[T]he *In re Peebles* rule would defy certain application. Would there be a *de minimis* exception? Would it matter if the unscheduled/concealed asset were a compact disc, as opposed to a compact car? A bag of potting soil, as opposed to an acre of land? And would it matter whether or not the unscheduled/concealed asset were potentially exempt? And would it matter (for purposes of "valid" case closing) whether the failure to schedule or concealment was advertent or inadvertent? Such questions, which flow logically from the *In re Peebles* holding, would work havoc on a statutory scheme that otherwise provides certainty and finality to the bankruptcy process.... Closure is not subject to an indefinite, undefined extension on account of a debtor's failure to schedule assets.

*Dolliver,* 255 B.R. at 254–255.

For the reasons espoused in the *Bevis* and *Dolliver* decisions, the Court agrees with the majority view and finds that a case is "closed" for purposes of §§ 350(a) and 727(e)(2) when the clerk's office enters its order closing the case. The time limits under § 727(e)(2) are not tolled if the case is subsequently reopened to administer assets the debtor failed to disclose. To hold otherwise would create an avenue by which a creditor could subject a debtor to revocation proceedings years after discharge based on a mere allegation of fraud. What if, in a situation such as that, the court ultimately determines that the debtor did not knowingly and fraudulently fail to disclose the asset, but only negligently did so? The resulting effect would be to expose a debtor to the costs and stress of litigation when there was no real basis for allowing the complaint to be filed in the first place. The Court is unwilling to create the opportunity for such a labyrinth of litigation.

### 3. Relation Back Doctrine

■ The third and final justification Humphreys has given for his timely filed argument is that his complaint should be considered timely filed because his motion to reopen was filed within the time limits of § 727(e). The Court has already found that Humphreys cannot succeed on his § 727(d)(1) claim because he knew about the debtor's allegedly fraudulent attempt to obtain his discharge prior to the granting of Stedham's discharge. As a result, even if the Court were to find Humphreys' complaint should relate back to the filing of his motion to reopen, Humphreys' action under § 727(d)(1) would still be time-barred. Turning to Humphreys' § 727(d)(2) claim, the Court must analyze whether or not the filing of Humphreys' motion to reopen within § 727(e)(2)'s time limits late-filed complaint can relate back to his motion to reopen which was filed within § 727(e)(2)'s time limits.

As support for his relation back argument, Humphreys cites the cases of *Johnson,* 187 B.R. 984, *Fresquez,* 167 B.R. 973, and *In re Beltz,* 51 B.R. 84 (Bankr. S.D.Ohio 1985). The Court finds that these cases provide little if any support for the plaintiff's argument. As discussed in footnote 13 of this opinion, the *Johnson* decision is based on a misreading of § 727(e)(2). In *Johnson,* the court held that the filing of a motion to reopen within one year from the date of closing tolled the running of § 727(e)(2)'s time limitations. The *Johnson* court did not address the

relation back doctrine; however, the logical conclusion to be drawn from such a ruling is that any § 727(d)(2) complaint filed after the motion to reopen would relate back to that date. It appears from reviewing the *Johnson* opinion that the court based its decision on a misreading of § 727(e)(2). Section 727(e)(2) clearly states that a complaint to revoke a discharge under § 727(d)(2) or (3) must be brought by the later of (1) one year from the date of discharge or (2) the date the case is closed. The *Johnson* court misplaced the "one year from" phrase when it read the statute and concluded that a revocation complaint must be filed by the later of one year from (1) the date of discharge or (2) the date the case is closed. Consequently, the *Johnson* decision is flawed and can provide no support for Humphreys' argument.

In the case of *In re Fresquez*, the debtors received a discharge on December 10, 1992. The plaintiffs filed a motion to reopen the debtor's case on April 2, 1993, which the court granted on April 20, 1993. The plaintiffs then filed a motion to compel discovery on August 20, 1993, which the court also granted. On November 26, 1993, the plaintiff filed a "Motion for Revocation of Discharge" and the defendant responded by filing a motion to dismiss on December 10, 1993. The court heard the motion to dismiss on December 14, 1994, and ordered the plaintiffs to file a memorandum demonstrating that the motion for revocation was properly filed. Instead of filing the memorandum, the plaintiffs filed a complaint for revocation on December 27, 1993, pursuant to § 727(d)(1) and alleged that they had no knowledge of the debtors' fraud until after the discharge was granted. The debtors alleged that the

complaint should be dismissed because it was untimely under § 727(e)(1). The plaintiffs argued that the complaint should relate back to their motion to revoke discharge which was filed within § 727(e)(1)'s time limits.

In analyzing the case, the *Fresquez*, court found that the late filed complaint for revocation could relate back to the timely filed, but procedurally defective, motion for revocation;[14] however, the court was careful to point out that its holding was a narrow one:

> Because the Defendant's were given the exact basis of the Plaintiff's asserted revocation in the Motion, the Plaintiff filed the Complaint immediately upon learning of the procedural defect, the Defendants are not prejudiced by the late filed complaint.

*Id.* at 977. The court in *Rose v. Beltz (In re Beltz)*, 51 B.R. 84 (Bankr.S.D.Ohio 1985), similarly allowed a late filed complaint objecting to dischargeability to relate back to an objection to discharge which had been filed timely. Both the complaint objecting to discharge and the objection to discharge in the *Beltz* case were filed prior to entry of the discharge order.

The *Fresquez* and *Beltz* cases are distinguishable from the one at bar for two main reasons. First, in the case at bar, Humphreys is not seeking to relate his late filed complaint back to an objection to discharge or a motion for revocation, but is instead seeking to relate it back to his motion to reopen. In that motion, Humphreys asked the Court to reopen the case and to hold the movant's debt, or the debtor's entire debt, to be "non-discharged." The non dischargeability of

---

**14.** The *Fresquez* court stated that "it is undisputed that a proceeding objecting to or for revocation of a discharge must be brought in an adversary proceeding . . . ." *Fresquez*, 167 B.R. at 976.

debts is addressed by 11 U.S.C. § 523. The revocation of discharge is a separate action addressed in § 727(d). While it is true that Humphreys alleged in his motion to reopen that the "Debtor knowingly and fraudulently misrepresented his assets," he did not cite any particular section of the Bankruptcy Code nor did he indicate that he was going to file any type of pleading which would seek to revoke the debtor's discharge. Had Humphreys filed a "Motion to Reopen and Set Aside Discharge" or stated in the body of the motion that he intended to file a revocation proceeding, the Court might have been willing to allow the complaint to relate back to the motion to reopen.

The second major difference between *Fresquez* and the case at bar is that the plaintiff in *Fresquez* alleged that it did not have knowledge of the debtors' fraud until after the discharge was entered. Admittedly, *Fresquez* was based on § 727(d)(1) which explicitly states that the party seeking revocation must not have known of the fraud prior to the discharge. Section § 727(d)(2) does not contain any such language; however, courts have required parties seeking to revoke a discharge under this section to prove they did not learn of the fraud until after the discharge was granted. *Canfield v. Lyons (In re Lyons)*, 23 B.R. 123, 126 (Bankr.Va.1982) ("The fact that subparagraphs 727(d)(2) and 727(d)(3) contain no language requiring the knowledge of any fraudulent conduct to be received after the discharge is granted, does not give a party in interest, who has knowledge of the probable wrongdoing the privilege to wait until after a discharge is granted to ask the court to revoke the discharge."); *Olsen v. Reese (In re Reese)*, 203 B.R. 425, 431 (Bankr.N.D.Ill.1997); *Ross v. Mitchell (In re Dietz)*, 914 F.2d 161, 163 (9th Cir.1990); *In re Couch*, 54 B.R. 682, 684 (Bankr.Ark.1985). If a party seeking revocation under § 727(d)(2) were not required to prove that at the very least they had no knowledge of the fraud prior to the objection to discharge deadline, what would be the purpose of § 727(a)(2)?

In the case at bar, Humphreys had knowledge that Stedham owned the antiques collection at the time of filing and that he did not report that asset on his schedules or at his meeting of creditors. Humphreys had this knowledge well before the April 14, 2003, deadline for filing complaints objecting to the debtor's discharge. Humphreys did not ever ask the Court for an extension of time in which to file a complaint objecting to discharge nor did he ever file any pleading with the Court that sought to block the debtor's discharge based on his failure to disclose the collection. Instead, Humphreys waited five and half months after Stedham's discharge to file his motion to reopen and then waited another eighteen months to file his complaint to revoke discharge.

Based on these facts, the Court finds it unnecessary to decide whether or not Humphreys' complaint can relate back to the motion to reopen. Humphreys' knowledge of Stedham's alleged fraud prior to the dischargeability deadline precluded him from filing any type of § 727(d)(2) action once the Court granted Stedham's discharge. The Court simply cannot allow a creditor who has knowledge that the debtor "with intent to hinder, delay or defraud a creditor or officer of the estate" is concealing property in time to object to discharge to sit on his hands and wait until sometime after the discharge is granted to file a revocation request under § 727(d)(2). At some point there has to be finality to litigation and a point at which a debtor can know with certainty that his bankruptcy case has concluded. This is especially true when a creditor has knowledge of the debtor's alleged behavior prior to the discharge. Any other result would open up

an avenue for creditors to harass debtors and subject them to unending costs and headaches.

## C. Conclusion

Although the Court is mindful that its holding might seem to stand for the proposition that a debtor who may have committed fraud will be allowed to get away with it, the Court would like to emphasize that the creditor's pre-discharge knowledge in this case is what defeated his complaint. Had Humphreys not known of Stedham's failure to list the collateral prior to the debtor's discharge or had Humphreys not been notified of the debtor's case, the result would certainly have been different. Ideally, what Humphreys should have done was notified the Court of Stedham's alleged failure to disclose the collection when he first discovered it. Instead, he chose to wait a significant amount of time after the Court issued Stedham's discharge to do anything about it. It is not for this Court to decide whether or not Humphreys' failure to act promptly was the result of ignorance or malice; however, this failure coupled with Humphreys' pre-discharge knowledge leaves the Court with no other conclusion but that his complaint must be dismissed.

## III. ORDER

It is therefore **ORDERED** that the Defendant's Motion for Summary Judgment is **GRANTED** and the Plaintiff's Complaint to Set Aside Discharge is **HEREBY DISMISSED**.

**IT IS SO ORDERED.**