IN RE: John E. FONNER, Debtor.

Daniel M. McDermott United States Trustee, Plaintiff,

v.

John E. Fonner, Defendant.

Case No. 15–54466
Adv. Pro. No. 16–2178

United States Bankruptcy Court,
S.D. Ohio, Eastern Division.

Signed September 26, 2017

Pamela Arndt, Columbus, OH, for Plaintiff.

Darlene E Fierle, Springboro, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER ON UNITED STATES TRUSTEE'S AMENDED COMPLAINT TO REVOKE DISCHARGE (DOC. NO. 4)

Judge Caldwell

This Memorandum Opinion and Order serves as the Court's findings of fact and

conclusions of law for the United States Trustee's Amended Complaint to Revoke Discharge (Plaintiff), and the Answer filed by the Debtor, John E. Fonner (Defendant). In the Amended Complaint, Plaintiff charges Defendant with eight counts of alleged violations of United States Bankruptcy Code (Code) Section 727(d)(1). The Defendant filed this Chapter 7 bankruptcy case on July 9, 2015, and Clyde C. Hardesty, III is the case trustee (Trustee). The fraud allegations relate to estate assets, and Defendant's actions and omissions from 2014 to 2015.

Specifically, Plaintiff contends that Defendant's failure to fully disclose, under oath and on paper, seven oil and gas leases and related income, as well as funds from the sale of musical instruments, amounts to fraud sufficient to revoke Defendant's discharge. Based upon the evidence, including credibility assessments, the Court finds and concludes that Plaintiff has proven its case, and the Court revokes the discharge. The bases for this decision follow.

Defendant's father died in 2013, leaving him an interest in an estate which included land in West Virginia, subject to oil and gas leases. In 2014 and 2015 preceding the bankruptcy filing, Defendant entered into seven additional oil and gas leases. All of the leases concern land located in Tyler County, West Virginia.

The first three of these leases were all between Defendant and Antero Resources Corporation (Antero). Defendant and Antero executed their first lease on January 15, 2014, covering 102.33 acres. Defendant and Antero executed their second lease on June 5, 2014, involving 26.5 acres. Defendant and Antero executed their third lease also on June 5, 2014, and it covered 60 acres. Between these three Antero leases, Defendant received $26,668.76 in signing bonuses. Approximately five months after the execution of the last Antero

lease, Defendant and Triad Hunter, LLC, (Triad) executed an oil and gas lease on November 19, 2014, covering 304.79 acres. From this transaction, Defendant received a $2,963.94 signing bonus.

Early the following year, on January 5, 2015, Defendant sold two musical instruments to a shop in Lansing, Michigan called Elderly Instruments. The sales included a banjo for a gross price of $2,800.00, and $2,253.00 after expenses, and a Tiple for a gross price of $1,100.00 ($760.58 after expenses). Then on June 18, 2015, less than a month prior to filing bankruptcy, the Defendant signed three additional oil and gas leases, this time with Statoil USA Onshore Properties, Inc. (Statoil). The leases respectively covered 41.25 acres, 6.00 acres, and 34.75 acres. Altogether, Defendant received $55,859.38 in signing bonuses.

Less than a month later on July 9, 2015, when Defendant filed his Chapter 7 bankruptcy case, he did not disclose any of these oil and gas leases, the related signing bonuses, or the profits from the sale of the musical instruments. At a minimum, this information should have been included on Defendant's Chapter 7 Means Test Calculation form (Means Test), in response to Questions 1or 2 of the Statement of Financial Affairs (Income from employment or business operations, or other), on Schedule G (Executory contracts and unexpired leases), and on Schedule I (Income). Further, after the bankruptcy filing Defendant signed at least two additional oil and gas leases.

As part of its statutory duties, Plaintiff's office reviewed Defendant's Means Test form and found that there was no presumption of abuse under Section 707(b)(2) of the Code. Plaintiff's paralegal testified that if Defendant had accurately completed the Means Test form, there may have been grounds to move for dismissal for

abuse, pursuant to Section 707(b)(1) of the Code. Yet, on July 21, 2015, Defendant's Counsel sent an email to Plaintiff that appears to have included pay advices for 60 days, along with a 2014 tax return. Plaintiff's paralegal credibly testified, however, that he did not receive this communication.

A month later, Defendant appeared for questioning at the meeting of creditors conducted on August 18, 2015. At that time, the Defendant testified under oath that there were no errors in his bankruptcy filing, and that he disclosed all assets on the schedules. Only after questioning by the Trustee, Defendant finally revealed the existence of some oil and gas leases and related income. There was no mention, however, of the instrument sales. In response, Defendant was instructed by the Trustee not to cash any further checks from the leases. However, Defendant did just that on November 9, 2016, with a $1,500.00 check. Defendant explained he used the funds to provide Christmas presents for his children.

In addition, during the meeting of creditors the Trustee asked Defendant if he had read, signed, and understood all of the documents concerning his bankruptcy filing, and his rights and responsibilities. Defendant responded in the affirmative. The Trustee instructed Defendant that he had to turn over any additional monies he received, post-petition. Finally, the Trustee directed the Defendant to take with him written instructions titled a "Post 341 Responsibilities Sheet", which reads in relevant part, "... If after today, you discover that as of the date your petition was filed, you owned or had an interest in property or had money, or had any claim against some other person or entity, which was not disclosed in your schedules or in your answers to questions today, you must immediately notify the Trustee of the existence and details of such a claim."

Approximately a month after the meeting of creditors an attorney for Defendant, Denis Blasius, sent the Trustee an email on September 11, 2015. It stated that Defendant had at least two previously undisclosed oil and gas leases. In addition the email stated that "we believe there are additional leases out there," but was not any more specific. The following month on October 22, 2015, the Trustee received additional correspondence from another attorney for Defendant, Darlene E. Fierle. It included two August 12, 2015, checks for oil and gas leases from Statoil—a check for $9,750.00, and another for $17,875.00.

A month later, on November 10, 2015, Defendant received his discharge. Exactly a year later, Plaintiff filed its Amended Complaint under Section 727(d)(1) of the Code that mandates revocation of discharge if it "was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge ...." To prevail Plaintiff must establish actual fraud by a preponderance of the evidence, including the intentional omission of assets from bankruptcy schedules. *Humphreys v. Stedham (In re Stedham)*, 327 B.R. 889, 897 (Bankr. W.D. Tenn. 2005); *Sicherman v. Rivera (In re Rivera)*, 356 B.R. 786 at *5 (6th Cir. BAP Jan. 11, 2007); *Johnson v. Meabon, et. al (In re Meabon)*, 508 B.R. 626, 630–31 (Bankr. W.D.N.C. 2014), aff'd, 514 B.R. 446 (W.D.N.C. 2014). Plaintiff also must prove lack of knowledge of the fraud in sufficient time to oppose the entry of a discharge. *In re Meabon*, at 630; *Lowe v. King (In re King)*, 2006 WL 3861097, at *3 (Bankr.W.D.Tex. 2006).

The Court finds and concludes that Plaintiff has sustained its burden on all counts. Five factors have been most persuasive. First, our bankruptcy system remains a marvel of balance between a

"fresh start" for honest but battered debtors, and the hope of recovery for creditors. *Schwarz v. Liechti (In re Liechti)*, 543 B.R. 26, 39 (Bankr. D. MT. 2015). Debtors, however, have duties of candor in their disclosure of assets and liabilities, in exchange for a discharge. 11 U.S.C. § 521(a)(1).

Moreover, when represented by counsel, the selected attorney shoulders a significant measure of this responsibility in the form of restrictions, disclosures, and requirements imposed upon attorneys as "debt relief" providers. 11 U.S.C. §§ 526(a), 527(a), and 528(a). Further, upon filing, all existing legal and equitable interests are fair game for trustee liquidation, subject only to a limited amount of exemptions intended to strike a balance between debtors and creditors. 11 U.S.C. §§ 541(a)(1) and 522(a).

This case is singularly noteworthy, however, for the utter failure to grasp and respect this balance. The evident slow-drip provision of information not only impedes administration, but also projects a lack of credibility and intent to deceive through acts and omissions. All this leaves the distinct taste of dishonesty that covers and swallows the whole.

Second, Plaintiff proved that Defendant failed to disclose the oil and gas leases, signing bonuses, and the sale of musical instruments on the bankruptcy schedules, means test form, and statement of financial affairs. At best, Defendant provides a cryptic reference on the original Schedule B that he is one of four heirs inheriting land with oil and gas leases- value "Unknown". Only under questioning from the Trustee did Defendant disclose some of the leases, but leaving out the music instrument sales.

Third, Defendant waited until February 9, 2017, to file amended schedules, means test form, and statement of financial affairs. This more than eighteen month hiatus between the initial filing and the amendments demonstrates a lack of candor, appreciation of the discharge privilege, and respect for the interests of creditors. Indeed, Defendant had so little concern that he cashed a $1,500.00 signing bonus check, after being told not to do so by the Trustee. In addition, Plaintiff's paralegal credibly testified that more complete information on the Means Test form may have altered the related presumption of abused culminating in the filing of a Code Section 707(b)(1) motion to dismiss.

■ Fourth, Defendant swore under oath at the meeting of creditors that his bankruptcy filing was true and accurate, and that he disclosed all assets. To support revocation, parties must demonstrate the existence of a known, intentional, and materially false statement under oath. *Saviano v. Tylee (In re Tylee)*, 512 B.R. 409, 416 (Bankr. E.D.N.Y. 2014). It is not credible that Defendant forgot the oil and gas leases and related signing bonuses, and the music instrument sales, or somehow failed to understand their significance to the bankruptcy filing. The sheer weight of the undisclosed transactions and the glacial revelation amply demonstrate a fraudulent intent to shield and/or delay the administration of significant assets.

Fifth, Plaintiff maintains that it did not know of such fraud until after the granting of the discharge. To meet the knowledge requirement pursuant to Code Section 727(d)(1), Plaintiff must establish that it neither knew, nor had reason to know, of the fraud prior to discharge. 11 U.S.C. § 727(d)(1); *In re Tylee*, at 418–19. On this point, Plaintiff's representative credibly testified that he never received a July 21, 2015, e-mail from Defendant's Counsel that appears to include pay advices for 60 days and Defendant's 2014 tax return. This information, if received, may have provided

some indication of the leases and other undisclosed assets.

 Further, the Trustee first became aware of some of the undisclosed assets during the meeting of creditors, and continued to receive trickles of information from Defendant's counsel. However, for purposes of revocation of discharge a case trustee is not considered an agent, and his knowledge is not imputed to other parties to the case, including the Plaintiff at hand. *McDermott v. Larson (In re Larson)*, 553 B.R. 646, 654 (Bankr. W.D. Mich. 2016).

For all these reasons, the Court finds and concludes Plaintiff has sustained its burden of proof on all counts, and the Court **REVOKES** Defendant's discharge.

**IT IS SO ORDERED.**